## Barnhart et al., Appellants, *v.* Lockwood et al.

*Oil lease—Abandonment of rights under.*

Lessees under lease dated March 1, 1876, agreed to go upon demised premises and operate the same for oil within forty days from the execution of the lease, but did not take possession or carry out their agreement. They afterwards sunk a test well near the demised premises which was a failure and which they abandoned, and nothing was attempted to be done towards the development of the property by the lessees until Dec. 18, 1889, when the property increased in value by reason of the development of others in the neighborhood. *Held,* that the action of the lessees amounted in law to an abandonment of any right they otherwise might have had under the lease.

*Lease for prospecting for oil.*

The lease in such case is not a grant of property in the oil, but merely a grant of possession for the purpose of searching for and procuring oil.

Argued Oct. 17, 1892. Appeal, No. 58, Oct. T., 1892, by plaintiffs, A. E. Barnhart et al., trading as Hoch Bros., from judgment of C. P. Butler Co., March T., 1891, No. 57, on verdict for defendants, M. L. Lockwood, Jas. S. Patterson, Chas. Young and Edwin Young. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Ejectment for undivided half of tract of land.

On the trial before McMICHAEL, P. J., plaintiffs claimed title under the following lease, dated March 1, 1878, from Chas. Young, one of the defendants, as party of the first part:

"The said party of the first part, for and in consideration of one dollar, the receipt of which is hereby acknowledged, the covenants and agreements hereinafter contained on the part of said party of second part to be paid, kept and performed, I

hereby bargain, grant, demise, lease and let unto the parties of the second part, their heirs and assigns, for the term of eighteen years from the date hereof the following described real estate [describing it].

"It is further agreed that if oil is found in vicinity, the said second parties shall have the refusal of balance of land, giving and granting to the party of the second part, their heirs and assigns, the full, free and exclusive possession of said piece of land during the term aforesaid, to bore, explore and dig for oil, and to collect and gather the same therefrom, together with the right to keep tanks thereon for the storage of oil and to lay all necessary pipe lines for the transportation of the same, and to erect thereon any buildings that the party of the second part may require for the purpose aforesaid. The parties of the second part, their heirs and assigns, shall have the full and free right to subdivide said lot of land into any number of smaller lots and pieces and sub-lease the whole or any part of said tract of land, and at the termination of the lease, or before, to remove all machinery and fixtures therefrom.

"In consideration of which the said parties of the second part, their heirs and assigns, covenant and agree to go upon said land and operate the same for the purpose aforesaid, and deliver as royalty to the party of the first part herein, their heirs or assigns, one eighth part of all oil obtained and saved from said land, and to keep true and correct books of account, showing the production of each and every well, the share or proportion due the party of the first part for royalty as hereinbefore provided, which books shall be kept open and free to the inspection of all parties interested in this agreement.

"And it is further agreed by and between the parties hereto, that if the oil produced from said tract of land be transported through any of the pipe lines, that the superintendent of the line through which the same may be transported is hereby authorized and empowered to set apart to the account of the said first part that portion of the production hereinbefore agreed upon as royalty. The said parties of the second part agree to drill a test well at or near Little Connoquenessing or Crab Run creek, commencing inside of forty days."

Further facts appear by the opinion of the Supreme Court.

Plaintiffs' points were as follows:

" 3. There can be no abandonment of the lease sued on short of the period of eighteen years. Abandonment is never predicated of a perfect but is confined to inchoate titles. *Answer :* That point is not affirmed. There could be abandonment of the title which the plaintiffs had to this land short of eighteen years." [1]

" 4. Plaintiff is entitled to recover the undivided one half of the premises described in the writ to the extent granted by their lease and for the purposes within written therein. *Answer :* That point is not affirmed. " [2]

" 5. This conveyance sued on is a grant of the realty, the oil in place, and is without any terms of forfeiture ; that is, is non-forfeitable for any cause alleged or shown. On this point it is in full life for the period or term written. *Answer :* That point is not affirmed. This contract is not a grant of a property in the oil, but it is a grant of possession of the surface with the right to procure oil." [3]

Defendants' points were as follows :

" 1. The title shown by plaintiffs, upon which they rely for recovery, is equitable merely, and they stand in the position of one seeking specific performance of a contract for a lease. Their delay in operating their lease for a period of more than eleven years unaccounted for, accompanied by an increase of the value of the territory for oil purposes caused by developments of others in the neighborhood, is such laches and failure of consideration as disentitles them to the relief they now seek in this action, and they are not now entitled to the verdict. *Answer :* Gentlemen, I am not inclined to affirm the first part, but the last part of it; that is, that the plaintiffs' delay in operating their lease for a period of more than eleven years unaccounted for, accompanied by an increase of the value of the territory for oil purposes caused by developments of others in the neighborhood, is such laches and failure of consideration as disentitles them to the relief they now seek in this action, and they are not now entitled to the verdict." [4]

" 2. If the lessees named in the lease of March 1, 1878, under which the plaintiffs claim, after completing the test well drilled at or near Crab Run in 1881, abandoned the same as an unsuccessful search for oil and sold or removed their tools, machinery and derrick, and never entered under the said lease for

purposes thereof or offered to do so until after the execution of the lease of Charles and Edwin Young to M. L. Lockwood on December 1, 1889, and the announcement of operations thereunder of the discovery of oil in the neighborhood, such facts constitute a surrender of the said lease of March 1, 1878, by operation of law. *Answer:* That point, gentlemen, covers, as I regard it, the entire defence as it is made in this case and it is affirmed. Of course, there is included in this point a statement of facts, hypothetically, that if the facts be so and so then it was an abandonment; that is true, and the facts being in this case not controverted, there being no dispute about them, the jury could not find them otherwise than as they are stated in this point to be. That, gentlemen, leaves you really nothing to do but find a verdict in this case for the defendants." [5]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–5) instructions, quoting them respectively.

*John M. Thompson* with him *Lev. McQuistion* and *Charles McCandless*, for appellants.—The lease is a grant of the oil or mineral in place; in effect, an absolute grant of land: Caldwell v. Fulton, 31 Pa. 485; Stoughton's Ap., 88 Pa. 198; Kemble Coal Co. v. Scott, 90 Pa. 332. The grant is not upon condition, either precedent or subsequent; the conveyance is complete: Garver v. McNulty, 39 Pa. 484; Gray v. Packer, 4 W. & S. 18; Watters v. Bredin, 70 Pa. 237 ; Perry v. Scott, 51 Pa. 121; Bear v. Whisler, 7 Watts, 144; Knege v. Elliott, 9 Watts, 260 ; Craven v. Bleakney, 9 Watts, 19; Krebs v. Stroub, 116 Pa. 405; Bortz v. Bortz, 48 Pa. 386; Heister v. Green, 96 Pa. 104; Putnam v. Tyler, 117 Pa. 585; Hoffman v. Bell, 61 Pa. 454; Bunting v. Young, 5 W. & S. 188; Urket v. Coryell, 5 W. & S. 83 ; Naglee v. Albright, 4 Wh. 300.

*T. C. Campbell*, with him *Miller & Gordon* and *W. D. Brandon*, for appellee.—The rescission of a lease by express words is a surrender in fact, and when by acts so irreconcilable to the continuance of the tenure as to imply the same thing, it is a surrender in law: McKinney v. Reader, 7 Watts, 123 ; 1 Washburn, Real Prop. 353; Kreutz v. McKnight, 53 Pa. 319;

Auer v. Penn, 92 Pa. 444 ; Lazarus's Est., 145 Pa. 1.  McNish v. Stone, No. 213, May T., 1879, unreported, per curiam, is similar to our case.  An oil lease must be construed with due regard to the known characteristics of the business : McKnight v. Gas Co., 146 Pa. 185.  The lease was an executory contract: Driesbach v. Serfass, 126 Pa. 32 ; Grove v. Hodges, 55 Pa. 504.  Plaintiff's title is equitable : McWilliams v. Nisley, 2 S. & R. 507 ; Clark v. Martin, 49 Pa. 299 ; Jordan v. McClure, 85 Pa. 495 ; Skinner v. Starner, 24 Pa. 123.

OPINION BY MR. JUSTICE STERRETT, November 11, 1892 :

The so-called oil lease, which is the basis of the plaintiff's claim in this action of ejectment, was executed and delivered to them, March 1, 1878, by Charles Young, who at that time was not the owner of the land.  It then belonged to his father, Adam Young, who prior thereto had made his will, wherein he devised said land, inter alia, to his two sons, Edwin and Charles, as tenants in common.  By his death two months after the lease was executed and delivered, said will became operative, and said Edwin and Charles then first became owners of the land.

By the terms of the lease, plaintiffs, as lessees of Charles Young, agreed to go upon the demised premises and operate the same for  oil and  deliver to the lessor one eighth of the oil obtained, . . . . and " to drill a test well at or near Little Connoquenessing or Crab Run creek, commencing inside of forty days."  They never drilled any well on the leased premises, but within the forty days they commenced work at a well on the Barnhart farm, belonging to one of the lessees, at or near the above mentioned stream, by hauling upon the ground some timbers for a " rig."  This was all they did until 1881, when they put up the " rig " on the Barnhart farm, and drilled a well which they finished in the fall of that year.  The test well having proved to be a complete failure, they sold the casing and machinery, and permitted the timbers to decay on the ground.  No other wells were drilled by them in the neighborhood, nor did they do anything further towards development of the land, embraced in the Charles Young lease, until December, 1889, nearly twelve years after it was obtained.  In the early part of the month, a producing oil well was com-

pleted, by other parties not interested in this controversy, on the Cable farm. This gave market value to the Young farm as oil territory; and, on December 11, 1889, Edwin and Charles Young leased the land in controversy, for oil purposes, at a bonus of $1,500, to Lockwood, who afterwards assigned the lease to Patterson, one of the defendants with the Youngs in this suit. On December 18, 1889, plaintiffs attempted to take possession of the premises, but their right to do so was denied and they were not permitted to enter. They afterwards brought this suit; but, before that was done, the demised premises had been developed by the last mentioned lessee by drilling thereon several wells.

The facts above outlined were substantially proved and were not contradicted. Their substance is embodied in defendants' second point for charge, in which the court was requested to say as matter of law, that they constituted a surrender of the lease on which plaintiffs base their claim to possession of the premises in controversy. The learned judge rightly held that the facts recited in the point were uncontroverted; and there being no dispute as to their correctness, he instructed the jury to find in favor of the defendants. That point and the answer thereto constituted the fifth specification. An examination of the record has failed to convince us that there is any error in the ruling complained of, and the specification is not sustained.

Nor was there any error in either of the learned judge's answers to plaintiffs' 3d, 4th and 5th points respectively. In refusing to affirm their third point, he rightly held that there could be an abandonment of any claim the plaintiffs had to possession of the land in controversy, short of eighteen years. He was clearly right in refusing to say, as requested in their fourth point, that "the plaintiffs were entitled to recover the undivided one half of the premises described in the writ, to the extent granted by the lease and for the purposes written therein." This point is predicated of the fact that nothing was ever done by Edwin Young to give plaintiffs any claim on his undivided interest in the land. Whatever right they acquired under the lease from Charles Young was abandoned. In fact they never went into possession under the lease, and their nonaction, etc., during a period of nearly twelve years, amounted,

in law, to an abandonment of any right they otherwise might have had.

In refusing plaintiff's fifth point, the court rightly held that the lease is not a grant of property in the oil, but merely a grant of possession for the purpose of searching for and procuring oil; no possession, as contemplated by the lease, was ever taken, and by their conduct plaintiffs abandoned any right that they had under the lease. As was rightly said by the learned judge, in his answer to defendants' first point: "The plaintiffs' delay in operating their lease for a period of more than eleven years, unaccounted for, accompanied by an increase in value of the territory, for oil purposes, caused by developments of others in the neighborhood, is such laches and failure of consideration as disentitles them to the relief they now seek in this action, and they are not entitled to the verdict."

Neither of the specifications of error is sustained.

Judgment affirmed.