# CHARLESTON.

## CRAWFORD *v.* RITCHEY.

Submitted February 6, 1897—Decided April 3, 1897.

1. OIL AND GAS LEASE—*Cancellation of Lease—Equity Jurisdiction.*

Where a lease is made on the 12th day of April, 1889, "for the sole and only purpose of drilling and operating for petroleum oil and gas for the term of twenty years, or as long thereafter as oil or gas is found in paying quantities," and providing that the lessee shall commence one well on or before the 10th day of May, 1889, and prosecute the same to completion, unavoidable accidents excepted, and on the 26th day day of October, 1889, the time is extended for such commencement of work by written endorsement on the lease to the 28th day of November, 1889, and nothing is done under said lease for the period of seven years from said last-named date, the lessee is presumed to have abandoned the said lease, and a court of equity may entertain a suit to cancel the lease and quiet title. (p.258.)

2. EQUITY—*Discretion of Court.*

A party has not an absolute right to the interference of a court of chancery to relieve him against his own act, but it is a matter of sound discretion, to be exercised by the court according to its own notion of what is reasonable and proper under all the circumstances of the particular case. *Eckman* v. *Eckman*, 55 Pa. St. 269. (p.259.)

Appeal from Circuit Court, Marshall county.

Bill by Robert Crawford against J. B. Ritchey. From a judgment sustaining a demurrer to the bill, plaintiff appeals.

*Reversed.*

ROBERT WHITE, for appellant.

J. B. McLURE, for appellee.

MCWHORTER, JUDGE:

At the April rules, 1896, Robert Crawford filed his bill in chancery in the Circuit Court of Marshall county against J. B. Ritchey, showing that the plaintiff and defendant entered into a written contract, as follows:

"This lease made this 12th day of April, A. D. 1889, by and between Robert Crawford, of Cameron township, of the county of Marshall and state of W. Va., of the first part, and J. B. Ritchey, of West Middleton, Washington Co., Penn., of the second part, witnesseth: That the said party of the first part, in consideration of the stipulations, rents, and covenants hereinafter contained on the part of the said party of the second part, his executor, administrators, and assigns, to be paid, kept, and performed, have granted, devised, and let unto the said party of the second part, his executors, administrators, and assigns, for the sole and only purpose of drilling and operating for petroleum oil and gas for the term of twenty years, or as long thereafter as oil or gas is found in paying quantities, all that certain tract of land situated in Cameron township, Marshall Co., and state of West Va., bounded and described as follows, to-wit: On the east by lands of Wm. Woodburn and others, on the north by lands of Samuel Kettle and others, on the west by land of Thompson and London, on the south by lands of town of Cameron, containing two hundred and sixty-four acres, more or less, excepting and reserving therefrom thirty rods around the buildings on the premises, upon which there shall be no wells drilled, the boundaries of which shall be designated and fixed by the party of the first part. The said second party hereby agrees, in consideration of the said lease of above-described premises, to give said first party one-eighth ($\frac{1}{8}$) of all the oil or mineral produced and saved from said premises, and further agrees to give $300 per annum for the gas from each and every well drilled on the above-described premises in case the gas is conducted and used off the above-described premises; the second party not to unnecessarily disturb growing crops thereon, or the fences. Said second party has the right, which is hereby granted him, to enter upon the above-described premises at any time, for the purpose of mining or excavating, and the right of way to and from the place of mining

or excavating, and the exclusive right to·lay pipe lines for the purpose of conveying and conducting water, steam, gas, or oil over and across the said premises, and also the right to remove at any time any and all machinery, oil well supplies, or appurtenances of any kind belonging to said second party. The party of the second part, his heirs and assigns, further agree to commence one well in Cameron or Liberty township, Marshall Co., West Va., on or before the 10th day of May, 1889, and prosecute the same to completion, unavoidable accidents excepted. It is further agreed, if gas is found in sufficient quantity, then first party shall have free gas for dwelling house and store (test well to be started on above farm, as per date above). It is understood by and between the parties to this agreement that all conditions between the·parties hereto shall extend to their heirs, executors, and assigns. In witness whereof, we, the said parties of the first and second part, have hereto set our hands and seals, the day and year above written. Robert Crawford. [L. S.] J. B. Ritchey. [L. S.]

"Witness: T. L. Davis.

"Cameron, West Va., Oct. 26th, 1889. It is agreed between the first and second party of within contract that the time for commencement of first well in Liberty or Cameron township as within mentioned shall be extended until the 25th day of November, 1889, and prosecuted to completion as stated in lease. In witness whereof, we set our hands and seals. Robert Crawford. [Seal.] J. B. Ritchey. [Seal.]

"Witness: T. L. Davis."

—Which lease was duly sealed, acknowledged, and recorded in the clerk's office of the county court of Marshall county.

Plaintiff charged in his said bill that it was the purpose, understanding, and intention between the said parties to the contract that the real estate therein described was to be used for the production of oil and gas, if any could be found, and that it was the purpose, understanding, and intention of the said parties, in entering into the said contract, that the said defendant should proceed to develop the said property as to said productions; and it was agreed thereby that a test well should be started

on the said farm before the 10th of May, 1889, for the purpose of such development thereon. Plaintiff further shows that such development of such property was the reason for his entering into the said contract with the said defendant, and that said lease or contract constituted a grant of the said property to the said defendant to bore, drill, or mine for oil or gas on the said property, and that it was the duty of the said defendant to have proceeded within a reasonable time, as the plaintiff charges as aforesaid, to develop whatever kind of oil or gas might be in said property at the time named, and further charges that the said defendant has not in any shape or form developed or attempted to develop the said property, or never endeavored to find any oil or gas thereon, and distinctly charges that the said defendant has utterly failed to even commence the said test well situated on said farm or property, as it was provided by said contract. Plaintiff further charges that the material consideration of his entering into the said contract was the development of whatever oil or gas may have been in or upon said property within a reasonable time, and that the provision as to such test well thereon was for that reason and purpose. He charged that under said contract it was the duty of said defendant to commence and complete such test well, and therefore prayed that the contract be set aside, and declared null and void, and for general or special relief, *etc.*

On the 10th day of September, 1896, the bill was demurred to; and the court sustained the demurrer. The plaintiff asked leave to file an amended bill, which was granted, and it was filed, wherein he charges, in addition to the allegations in the original bill, the following allegations: "That he demanded of and requested the defendant to proceed to develop said property, and to carry out the purposes, undertaking, and intentions before referred to between the parties: but said defendant never in any way respected said demands and requests. Yet said plaintiff charges that said defendant has in no way performed or attempted to perform his duty in this regard, and that defendant is not now, nor has he been since the date of said contract, nor was he then, a citizen or resident of the State of West Virginia, and that there is and can be no

way to ascertain damages which could be recovered at law by reason of the acts of the said defendant in connection with said contract, or by reason of the failure and neglect of the defendant hereinbefore set out in any way, or either of them; that there is not, and has not been, any market value by which the measure of such damages could be ascertained at law; that in fact the plaintiff has in this matter no real compensatory remedy at law; that plaintiff is by reason of said contract and of the premises aforesaid injured; that he is prevented and delayed in the enjoyment of said property, and particularly in its development for gas and oil; that his right and use to the enjoyment of said property, particularly in the developing of oil and gas in or upon said land by himself or through others, is, by reason of the premises aforesaid, affected, retarded, injured, and beclouded; and that gas and oil is being now, and has for a long time past been, developed in and upon the lands near and in the region of the said land described in said contract, which, by reason of the premises aforesaid, the development of said land is not only impeded by said contract, and the said conduct and neglect aforesaid of said defendant with reference thereto, but in fact the development of said territory for oil and gas has thereby been prevented; that neither plaintiff nor defendant has assigned or transferred any right or rights that either may have had under said contract. Plaintiff prays that the said J. B. Ritchey may be made defendant to this amended bill, and required to answer the same; that the rights of said Ritchey under and by virtue of said contract may be declared by this court to cease and be at an end, and that thus the plaintiff may be fully enabled to use and enjoy his said property, to develop the same for oil and gas, or either, or have the same developed without let or hindrance by the defendant or any one for said defendant, and for such other relief, either general or special, as the nature or the case requires," *etc.,*—to which amended bill the defendant also demurred, and the court sustained the demurrer, and dismissed the bill, with costs.

The first assignment is that the court erred in sustaining the demurrer to the original bill, and the second, in sustaining the demurrer to the amended bill, and dismissing the same. This was a contract made April 12, 1889, and,

by its terms, the lessee was to begin a well on or before the 10th of May, 1889, less than a month from the date of the lease, and prosecute the same to completion, unavoidable accidents excepted. Nothing was paid for this lease, and nothing to be paid if no oil or gas was found. On the 26th of October of the same year, it was further agreed by writing on the lease, and signed by the parties, that the time for so commencing the first well should be, and was thereby, extended to November 28, 1889, and to be prosecuted to completion as stated in the lease. It would seem from this indorsement that the parties both understood that defendant had no right even at that date to proceed under the lease, without the consent of plaintiff. It was the duty of defendant to begin his work at the time specified, and to complete it in a reasonable time. The amended bill alleges that gas and oil have been developed in and upon other lands near to and in the region of the leased premises, and were at the time of the filing of the amended bill being so developed; and that, by reason of the said contract of lease, he has not only been impeded in, but prevented from, developing his said territory, alleging that he is injured thereby, that his title is beclouded, and that he has no adequate remedy at law; he cannot have his action of ejectment, he being in possession; and there is no way of ascertaining the measure of damages. The defendant has no vested title, and has abandoned the lease, never having done anything under the lease after a lapse of about eight years. This on the theory that the allegations of the amended bill are true, which, by his demurrer, the defendant admits. *Oil Co.* v. *Fretts,* 152 Pa. St. 451, (25 Atl. 732). A vested title can not ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. A lease of a right to mine for oil, *etc.,* stands on different ground. The title is inchoate, and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.

If defendant had possession under the terms of his contract, and developed gas and oil, or either, he would have had vested rights, of which he could not have been ousted or devested; but the lease being "for the sole and only purpose of drilling and operating for petroleum oil and gas, for the term of twenty years, or as long thereafter as oil or gas is found in paying quantities," and providing that he shall commence within a month in the first instance, and afterwards a few months, when it is by consent renewed and extended from October 26 to November 28, 1889, to begin the work, he must be presumed to have abandoned it. In the case of *Iron Co.* v. *Trout*, 83 Va. 397 (2 S. E. 713), the court says: "The lease was for a term of twenty years; yet, looking to its nature and object, it cannot be contended that the lessees had the option to work or not to work the ore mines for an indefinite time, and thus convert what was designed to yield a handsome daily income to the lessors into a mere barren incumbrance on his hand,—a cloud on his title, an incubus and a a manacle, which would oppress him, and destroy the marketable value of his land. No lease of land for a rent, for a return to the landlord out of the land which passes, can be construed to be intended to enable the tenant merely to hold the lease for purposes of speculation, without doing and performing in connection therewith what the lease contemplated. Such a construction would, indeed, make all such contracts a snare for the entrapment and injury of the unwary landowner. A man buying and paying for land may do with it what he likes,—work it, or let it lie idle. But a tenant to whom land passes for a specified purpose has no such discretion. He must perform what he stipulated to do; and, if he has obtained the lease by misrepresentation and fraud, the lessor may have it rescinded in equity." It is true there is no allegation in the bill that the lease was procured by fraud, but when nothing has been done under the contract for the period of nearly eight years, when it was stipulated therein for work to be commenced within one month from the date of the contract, the presumption is that the lessee has abandoned the lease; and, if such abandoned lease interferes with and hinders the development of the leased premises and enjoyment thereof, a court of equity may entertain a

suit to cancel lease and quiet title. *Eckman* v. *Eckman*, 55 Pa. St. 269: "A man has not an absolute right to the interference of a court of chancery to relieve him of his voluntary act, but it is a matter of sound discretion, to be exercised by the court, according to its own notion of what is reasonable and proper, under all the circumstances of the particular case." The court erred in sustaining the demurrer to plaintiff's amended bill, and dismissing same. The decree complained of is therefore reversed, and cause remanded for further proceedings to be had therein.

*Reversed.*