## JACKSON et al. v. TWIN STATE OIL CO. et al.

No. 12047—Opinion Filed July 24, 1923.

Rehearing Denied Sept. 18, 1923.

(Syllabus.)

1. **Contracts—Time as of the Essence.**
Section 5061, Comp. Stat. 1921, provides:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

Held, while no particular form of expression is required, nevertheless it must appear from the expressed provisions contained in such contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be of the essence thereof.

2. **Oil and Gas—Oil Lease — Forfeiture — Slight Delay in Paying Rental.**
An oil and gas lease providing if no well be commenced on the land before the 1st day of March, 1918, the lessee on or before said date shall pay or tender to the lessor $60 a month in advance till royalty exceeds rental, which shall operate as rental for one month thereafter, and shall continue to pay a like sum each month in advance until a well is commenced on said premises, but containing no forfeiture, held, time is not of the essence, and that a slight delay in making the fourth monthly payment due under the contract did not forfeit or terminate the contract.

3. **Courts—Stare Decisis—Forfeiture of Oil Leases.**
Where the decisions of the court of last resort have been accepted and acted upon as the correct interpretation of the law for a long period of time, courts are slow to interfere with principles announced in the former decisions, and often uphold them even though they would decide otherwise were the question a new one.

But a party who obtains an oil and gas lease, with notice of an existing lease, cannot successfully invoke the doctrine of stare decisis on the assumption that the lessors in the existing lease had the right to declare a forfeiture, under a rule of construction adopted by the Supreme Court construing the provisions of a lease contract in

some respects, but not in all, similar to the one which the lessors attempted to declare forfeited, in order to execute another lease to such party.

### 4. Constitutional Law — Due Process of Law—Impairment of Contract—Change in Judicial Decisions.

The obligation of a contract must have been impaired by some constitutional or statutory provision to be within the prohibition of section 1 of the 14th Amendment of the Constitution of the United States. A change of judicial decisions is not violative of this constitutional provision.

### 5. Estoppel—Estoppel by Conduct—Right to Invoke.

The doctrine of estoppel by conduct is an equitable doctrine and is not available to a party guilty of inequitable conduct in reference · to the transaction in which he invokes its application.

Record examined and held, that · the judgment of the trial court be reversed.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by S. G. Jackson et al. against the Twin State Oil Company, a corporation, et al., for cancellation of oil and gas lease and accounting. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with directions.

C. L. Pinkham, W. S. Cline, and William H. Cline, for plaintiffs in error.

J .A. McCollum, C. C. McCollum, and W. J. Gregg, for defendants in error.

KENNAMER, J.   This is an action brought by the plaintiffs against the defendants, A. J. Moore and Maggie Moore, Twin State Oil Company, a corporation, and Carl D. Smith, in the district court of Pawnee county, for the cancellation of a lease given by the said Moores to the Twin State Oil Company, a corporation, on the 3rd day of June, 1918, for an accounting with the Twin State Oil Company for production on said land, and for a confirmation of the plaintiffs' said lease as against all of the defendants. The plaintiffs in error were the plaintiffs below, and the defendants in error the defendants below.

The court found all of the issues made by the pleadings in favor of the defendants and entered judgment denying the plaintiffs any relief. This appeal is prosecuted by S. G. Jackson et al., plaintiffs in the trial court, to reverse the judgment therein entered.

This case was before the Supreme Court of this state in the same styled case, No. 10901, 79 Okla. 59, 191 Pac. 590, on an appeal taken by the plaintiffs against the defendants from a judgment of the district court of Pawnee county sustaining the demurrer to the plaintiffs' petition and dismissing plaintiffs' cause of action, wherein this court held that the plaintiffs' petition stated a cause of action and that the district court committed reversible error in sustaining the general demurrer to the petition.

Upon the trial of this case the material facts shown of record are, briefly, as follows:

On the 12th day of October, 1917, the lessors, A. J. Moore and wife, were the owners of 80 acres of land in Pawnee county, state of Oklahoma, and on said date the said Moores executed to S. G. Jackson, one of the plaintiffs in error, an oil and gas lease on the said 80 acres of land in consideration of a bonus of $1,200; and said oil and gas lease was deposited in escrow in the First State Bank of Terlton, Okla., until the said bonus was paid. The said oil and gas lease was prepared by one Wesley Jackson, an employe of the said First State Bank of Terlton, and acting at the time for the defendants Moore and Moore, and at the request of Moore and Moore, the said Wesley Jackson being in no way related to the said S. G. Jackson, one of the plaintiffs in error.

At the time of the execution of the said lease (October 12, 1917) the lessee paid the lessors $100 and agreed to pay the balance of the $1,200 in 60 days. At the expiration of the said 60 days the lessee secured an extension of 30 days and paid the lessors at the same time another $100, leaving a balance of $1,000 to be paid lessors on or before January 12, 1918. The lessee on January 18, 1918, six days after the 30 days had expired, secured a further extension until March 1, 1918, paying the lessors at the time another $100, leaving a balance to be paid lessors of $900.

On the 28th day of February, 1918, the lessee paid the lessors the balance due on the bonus of $900 and at the same time paid the lessors the March rental of $60. At the same time, February 28, 1918, and for the first time, the said lease, which had remained in the custody of the bank at Terlton until the total of the bonus was paid, was delivered to the lessee (Jackson). The first rental due under the terms of the lease was paid, as before stated, on February 28, 1918, as and for the month of March, 1918. The monthly rentals for April

and May, 1918, were deposited in the post office for remittance to the Pawnee County State Bank, designated in the lease contract as the depository bank, on the 1st day of each month, reaching the bank on the next day, or the 2nd of the month. The fourth payment for the month of June was mailed to the bank at Drumright on the 3rd day of June, 1918, and reached the bank on the 4th day of said month. The cashier of the bank, Mr. E. L. Epperson, notified Mr. Jackson that the Moores would not accept the payment for June and had declared said lease forfeited, and made and executed another lease to other parties.

The material provisions of the Jackson lease involved in the action are as follows:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, unless the same is sooner surrendered by lessee, and that the consideration above stated is paid and accepted as a good and sufficient consideration for each and every right or privilege granted to lessee herein, including the right to pay rental in lieu of drilling wells and the right to surrender this lease as hereinafter provided.

"If no well be commenced on said land on or before the 1st day of March, 1918, the lessee on or before said date shall pay or tender to the lessor, or deposit to the lessor's credit in the First State Bank at Terlton, Oklahoma, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of sixty dollars a month in advance till royalty exceeds rental, which shall operate as rental for one month thereafter, and shall continue to pay a like sum each month in advance until a well is commenced on said premises. * * *

"Lessor hereby agrees that the deposit by lessee of a valid bank check or draft in any United States post office duly registered and addressed to the lessor, heirs, assigns or legal representatives, or the bank above named, shall be and constitute a good and sufficient tender of any sum which may become due under this lease. * * *

"The lessee shall have the right at any time, on the payment of a sum equal to one-fourth of the annual rental as hereinabove provided to the lessor, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine; provided, this surrender clause and the option therein granted to the lessee shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease, or any part of its terms or to recover possession of the leased land, or any part thereof, against or from the lessor, their heirs, executors, administrators, successors or assigns or any other person or persons."

It appears from the findings of fact made by the court that the plaintiffs learned of the execution of the lease by the Moores to the Twin State Oil Company on or about the 6th day of June, 1918. The Twin State Oil Company took possession of the leased premises in February, 1919, and was developing the lease by drilling for oil and gas, and by said operations it was ascertained some time about the 1st of April, 1919, that said lands were valuable for oil and gas purposes and would produce the same in paying quantities. The evidence discloses that the plaintiff Jackson, after he had obtained the information that the Moores had executed a lease to the Twin State Oil Company, went immediately to Tulsa, Okla., and saw a Mr. Finch, who had induced the Moores to execute the lease to the Twin State Oil Company, and some negotiations were had about settling the conflicting claims of Jackson and the Twin State Oil Company, but no agreement was reached.

The testimony of A. J. Moore discloses that about June 1, 1918, when Mr. Finch was seeking to obtain a lease from the Moores for the Twin State Oil Company, Mr. Moore advised Mr. Finch that Mr. Jackson held a lease on the land and that the time was up or nearly up for another monthly payment. Mr. Moore testified that Mr. Finch insisted upon him executing the lease on the first day of June. Mr. Moore advised him that he wanted to give Mr. Jackson a fair show and chance to redeem himself, if he saw fit to do so. This is, in effect, the testimony of Mr. Moore as to his conversation with Mr. Finch.

It appears from the findings of fact and the conclusion of law applied thereto that the trial court held that the failure of Jackson to pay his monthly rental for the month of June on or before the first day of said month authorized the lessors, the Moores, to terminate the lease contract, although the lease prepared by the cashier of the Pawnee County State Bank for the Moores contained no express provisions providing that a failure to pay the monthly rental on the date due should terminate the contract. The trial court concluded that time was of the essence of contract. Whether this conclusion of the court was correct is the controlling question in this appeal. We have carefully examined the record in this case,

and under the undisputed facts, as found by the trial court, we are unable to concur in the conclusion of law reached in the trial of this case.

The lease contract containing no provision for termination or forfeiture, and the lessee having paid a substantial amount of money to the lessors as a cash bonus, to hold that the failure to pay the rental of $60 per month on the first day of the month, and where said payment was remitted and reached the depository bank by the fourth day of the month, would do violence to the plain provisions of section 5061, Comp. Stat. 1921, which reads as follows:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

This court in numerous cases has construed this statutory provision and held that before time shall be of the essence of a contract it must be expressly stipulated therein, and while no particular form of expression is required, nevertheless it must appear from the expressed provisions contained in such contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be of the essence thereof. Standard Lbr. Co. v. Miller & Vidor Lbr. Co., 21 Okla. 617, 96 Pac. 701; Snyder v. Stribling, 18 Okla. 168, 89 Pac. 22.

In Aggers v. Shaffer, 256 Fed. 648, the Eighth Circuit Court of Appeals held:

"The lease under which plaintiff claims contains no forfeiture clause nor provision making time of rental payments of the essence of the contract. Plaintiff's interest in the premises is a substantial one; it was not based on a mere unilateral option subject to the strictest construction and forfeitable for the slightest deviation.

"The failure to pay at the precise time due was a pure accident or mistake. It was not intentional nor in conscious disregard of the rights of the lessors or their grantees. The injury to the latter was not appreciable. Their position was technical and without substantial equity."

See Annotated Cases, 1913D, page 933, wherein it is said:

"The law on the subject has been stated as follows by one court: 'Even though the contract contains a provision for forfeiture in case of a failure to perform strictly in point of time, nevertheless a court of equity will examine the whole contract in the light of the surrounding circumstances to ascertain whether it was the real intention of the parties that the party in default should lose the right secured to him by the contract.

A stipulation to the effect that in case of default a party shall lose his rights under the contract is often inserted by way of penalty, merely with a view to induce a more prompt performance, and not with the intention that a failure strictly to perform in point of time shall work an absolute forfeiture. When such appears to have been the intention of the parties, if the party in default tenders a performance promptly and with reasonable diligence, and if the other party has suffered no damage by the delay, and particularly if the property has not materially enhanced in value, during the time of the delay, a court of equity will not enforce the forfeiture.'" (Citing Steele v. Branch, 40 Cal. 11).

"In reference to the foregoing statement that the vendee should give a reasonable excuse for the delay it may be said that it appears to be sufficient if he shows circumstances which negative the idea of willful neglect, or gross carelessness on his part."

In the case of Brunson v. Carter Oil Company, 259 Fed. 656, Judge Williams held:

"A lessee in an 'unless' oil and gas lease, which paid a substantial consideration for an optional right of exploration, with right of renewal each year thereafter for five years by paying a yearly rental in advance, and which paid the rental for the first renewal, and also for the second in due time, but through inadvertence and mistake made the second payment to the original lessor, as shown by its system of records upon which it relied for such purpose, although notified of the transfer of the land, when sued for cancellation of the lease, held, entitled to equitable relief under Rev. Laws 1910, sec. 2844, providing for relief against forfeiture; or a loss in the nature of a forfeiture, occurring without gross negligence or fraud."

It must be borne in mind in the instant case that the lessee, Jackson, paid a substantial sum as a cash bonus in consideration of the execution of the lease by the lessors, and had paid three of the monthly payments of $50 each, or a total of $180, and in this situation a court of equity must recognize the fact that the lessee had a substantial interest in the premises by reason of these payments. The position of the lessors, the Moores, in attempting to abruptly terminate the lease, for a delay of two days in making the fourth monthly payment, at the instance and solicitation of the Twin State Oil Company, seeking to obtain a lease in total disregard of any rights of the lessee, Jackson, is a most technical one.

We believe the better rule is that, where an oil and gas lease does not provide in express terms for a forfeiture or termina-

tion for nondevelopment or nonpayment of rental, and the lessee has paid a substantial amount of cash bonus, the lessor cannot declare a forfeiture for such failure alone, unles such failure continues for such time as to warrant the presumption that the lessee has abandoned the lease or willfully refuses on demand to perform the obligations of the contract. And the nonpayment of rental, continued for an unreasonable time, will authorize the lessor to have said lease canceled as a cloud upon the lessor's title. Archer's Law and Practice in Oil and Gas Cases, chapter 18, page 395; Smith v. Root, 66 W. Va. 633, 66 S. E. 1005; Bluestone Coal Co. v. Bell, 38 W. Va. 297, 18 S. E. 493; Crawford v. Richey, 43 W. Va. 252, 27 S. E. 220; Tenn. Oil, etc., Co. v. Brown, 65 C. C. A. 524, 131 Fed. 696; Logan Nat. Gas. etc., Co. v. Great Southern Gas Co., 61 C. C. A. 359, 126 Fed. 623; Fed. Oil Co. v. Western Oil Co., 57 C. C. A 428, 121 Fed. 674; McIntosh v. Robb, 4 Cal. App. 484, 88 Pac. 517; Mills v. Martz, 77 Kan. 218, 94 Pac. 142; Flannagan v. Marsh, 32 Ky. L. Rep. 184, 105 S. W. 424; Kimball Oil Co. v. Keeton, 31 Ky. L. Rep. 146, 101 S. W. 887; Graham v. Barnhart, 117 La. 1023, 42 South, 489.

This court has in numerous cases held that equity will refuse to quiet title under an oil and gas lease where a well was not completed or payment tendered within the period fixed under expressed provisions of the lease, where the lease provided such failure to operate or pay the delay money should terminate the contract as to both parties. Curtis v. Harris, 76 Okla. 226, 184 Pac. 574; Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597; Bearman v. Dux Oil and Gas Co., 64 Okla. 147, 166 Pac. 199; Garfield Oil Company v. Champlin, 78 Okla. 91, 189 Pac. 514.

It is apparent from a consideration of this class of cases that the equitable rules ordinarily involved in cases of equitable cognizance have no application to such cases, for the reason the court will leave the parties in the same position that they have placed themselves under the provisions of their contract. If the parties have agreed that at a certain time and under certain conditions a contract shall terminate or end, and the parties have a right to enter into such a contract, in the absence of fraud or mistake there exist no facts under which the power of a court of equity may be invoked, but the court in this situation will leave the parties where they have placed themselves by their own voluntary act.

Stebbins et al. v. Lena Lumber Company, 89 Okla. 244, 214 Pac. 981.

Counsel for the defendants in error have argued that the plaintiffs in the action instituted the same for specific performance, and that a court will not decree specific performance when the plaintiff has defaulted in the performance of some material obligation contained in the contract. We cannot concur with counsel in their contention that this action was one for specific performance. The primary relief which the plaintiffs asked for was a cancellation of the defendants' lease, taken in disregard and violation of the rights of the plaintiffs, and for an accounting. But counsel for the defendants insist that if the action is not for specific performance, the defendant the Twin State Oil Company obtained its lease under the law as announced and declared by this court in the case of Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, wherein it was held that the lessor in an "or" lease containing no forfeiture provisions had a right in default of the lessee to commence drilling operations or pay the delay money to declare a forfeiture of the lease contract. We do not believe this contention is tenable, for the reason the surrender clause in the instant lease in controversy is different from the surrender clause considered and construed in the case of Brown v. Wilson. Furthermore, the lease considered in the case of Brown v. Wilson was executed in consideration of $1 and the other covenants and agreements therein contained, and it does not appear that the lessee had paid to the lessor a substantial amount of money as a cash bonus in consideration of the execution of the lease.

It is considered that the doctrine announced in Brown v. Wilson was modified in the case of Northwestern Oil & Gas Co. v. Branine, 71 Oklahoma, 175 Pac. 533, and specifically overruled in the case of Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86. In the case of McCray v. Miller et al., 78 Okla. 16, 186 Pac. 1089, at page 1091. this court quoted with approval from the case of Cleveland (Ohio) 235 U. S. 50, 35 Sup. Ct., 21, 59 L. Ed. 127, as follows:

"It is equally well settled that an impairment of the obligation of the contract, within the meaning of the federal Constitution, must be by subsequent legislation, and no mere change in judicial decision will amount to such deprivation. Ross v. Oregon, 227 U. S. 150, 161 (57 L. Ed. 458, 463, 33 Sup. Ct. Rep. 220, Ann. Cas. 1914C, 224); Moore-Mansfield Constr. Co. v. Electrical Installation Co., 234 U. S. 619, 624 (58 L. Ed. 1503, 1505, 34 Sup. Ct. Rep. 941)."

Black's Constitutional Law (3rd Ed.) 722, states the rule as follows:

"The obligation of the contract must have been impaired by some law, that is, some constitutional provision or statute; but a decision of a court is not a 'law,' and a change of judicial decisions is not obnoxious to this constitutional prohibition, though it may invalidate contracts previously sustained."

The true rule is that where the decisions of the court of last resort have been accepted and acted upon as the correct interpretation of the law for a long period of time, courts are slow to interfere with principles announced in the former decisions, and often uphold them even though they would decide otherwise were the question a new one. Inman v. Sherill, 29 . Okla. 100, 116 Pac. 426.

We are clearly of the opinion that, the Twin State Oil Company having constructive and actual knowledge of the existence of the lease executed to Jackson, and the recorded lease disclosing that the surrender clause was different from the one considered and construed in the case of Brown v. Wilson, supra, in that in the Jackson lease it was provided that the lessee's right to terminate and surrender the lease was conditioned upon the payment of a sum equal to one-fourth of the monthly rental provided for in the lease, and it being provided, further, that the surrender privilege granted to the lessee should become inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee for the enforcement of any of the terms of the lease, the rule of construction applied in Brown v. Wilson is not controlling. The clause considered in the Brown v. Wilson Case granted to the lessee the right to surrender upon the payment of $1, and did not contain any provisions that the surrender clause should become inoperative on the institution of any action by the lessee to enforce the terms thereof.

It is ordinarily held that the failure to perform the contract within the specified time, in the absence of a specific termination clause, does not operate as a dissolution of the contract. Graham v. Barnhart, supra.

A party in a court of equity ordinarily has no absolute right to relief, but must present such a state of facts as will cause the court to act for his relief in the exercise of its sound discretion. Crawford v. Ritchey, supra; Eckman v. Eckman, 55 Pa. St. 269.

The Twin State Oil Company, with full knowledge of the existence of the plaintiff Jackson's lease, had no right to assume that, under the rule announced in Brown v. Wilson, supra, construing a contract distinguishable in terms, a court of equity would. uphold the abrupt action of the Moores, at the solicitation of its agent, in declaring a forfeiture of the lease contract they had executed to Jackson.

Counsel for the defendants assert that the plaintiffs were not entitled to any relief by reason of their laches, and that their conduct was such as the doctrine of estoppel should be applied. We deem it sufficient to state with reference to this contention that we have carefully examined the testimony and findings of fact, and we fail to find there was such delay in bringing the action that it may be held that the plaintiffs are guilty of laches, or that the doctrine of estoppel should be applied. Defendant did not take possession of the land until sometime in February, 1919, and the action was instituted in May 1919. Furthermore, the defendant Twin State Oil Company was advised by the Moores on the date of the execution of its lease that the plaintiff Jackson had a lease upon the premises, and without making any effort to obtain a release of the Jackson lease or to ascertain the extent of his interest and rights in the premises, said defendant actively advised the Moores to execute a lease and wholly disregard the rights of Jackson. We, therefore, conclude that the conduct of said defendant, Twin State Oil Company, is such that it does not appeal to the conscience of a court of equity to protect it in attempting to deprive the plaintiff Jackson of his interest in the premises by applying the equitable doctrine of estoppel by conduct.

In view of the conclusion herein reached, the judgment of the trial court is reversed, and the cause is remanded to the district court of Pawnee county, with directions to cancel the lease of the Twin State Oil Company and take an accounting as to the oil taken from the premises after deducting the cost of production, and render such judgment as the plaintiffs are entitled to.

JOHNSON, C. J., and NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.