**PURE OIL CO et v STURM et**

Ohio Appeals, 5th Dist, Perry Co

Decided Nov 20, 1930

T. M. Potter, New Lexington, Tague & Tague, New Lexington, Herbert M. Myers, Columbus, C. R. Post, Columbus, and Eagleson & Laylin, Columbus, for plaintiffs.

Pyle & McGonagle, New Lexington, for defendants.

ROBERTS, J.

Some trouble and confusion have arisen by reason of the fact that the plaintiffs in their original petition set out in detail their version of how they happened to fail to make the rental payment due May 9, 1927. It was wholly unnecessary for them to do so. They brought their action and based their alleged rights to the lease, the leased premises, and the gas produced therefrom, upon the proposition that the lease was existing and effective. They might well have phrased their petition as they did their amended petition, asserting the validity and effectiveness of the lease, and thereby throwing the burden upon the defendants of taking the affirmative and showing how the lease, not otherwise criticized, had become ineffective and void, as claimed by the defendants. This method of pleading gave the defendants the seeming advantage of standing upon the defensive. It has been the consistent claim and position of the plaintiff all through this case that their lease has at all times been valid and effective. The allegation concerning the failure to pay the rental was simply an explanation of what the defendants had taken as an excuse, or a reason, for executing a top lease upon the premises in question. What the referee evidently has in mind, without using the term, in thus summarily disposing of the issues, is what is usually known as a departure in pleading, more frequently occurring between the petition and the reply, in which a new, separate, and independent action is set up in the reply or in a later pleading, wholly different from the original cause of action. Such is not the fact in this case. In the petition and in the amended petition the plaintiffs base their cause of action upon their lease, and not otherwise. The issue presented by the plaintiffs is precisely the same in the amended petition as in the petition; that is, the rights accruing to them under the terms of the lease. The surplusage of the original petition, digressing concerning the failure to pay, is followed by a denial, in effect, of this default in payment in any way affecting their rights under the lease. There is no departure in this case and no change in cause of action.

It is further the conclusion of the referee and this was also urged upon him by counsel for the defendants, in effect that the cause of action of the plaintiffs was based upon an alleged mistake, and that, because it was not a mutual mistake of the defendants as well as the plaintiffs, the plaintiffs have not shown a cause of action in their pleadings, and therefore for this reason also they must fail in this action. Numerous authorities have been cited in brief and in the referee's report upon this proposition, concerning which time will not be devoted to discussion. What the referee

and counsel for the defendants presumably had in mind in asserting this proposition is that general rule that, when relief is sought by one party from the obligation of a contract, it is essential that the mistake be mutual to both parties. The issues of this action are upon the lease in question. In attempting to enforce it, on the part of the plaintiffs, and a claim that it has been breached, by the defendants, the plaintiffs are not relying upon any mistake for their cause of action. In the unfortunate surplusage of their petition, they set out how it happened that they failed to make the specified payment, through inadvertence or misapprehension, and follow that up with the claim that their mistake, or failure, was not important and does not justify a forfeiture of the lease, as claimed by the defendants. This contention regarding "mistake" is wholly foreign to the issues, and has no application in this case.

Another issue, and this is the most important one, is what effect, if any, the failure to make the specified payment had upon this lease. The plaintiffs claim that under the circumstances and environments it was unimportant and did not breach the lease or affect its validity. The defendants, on the other hand, claim that the failure to pay did breach the contract, and gives them a right to declare it forfeited, and to consider it no longer effective, and to give a good subsequent lease to the defendant Sturm. This lease, in form, is what is usually known as an "or" lease, and contained no forfeiture clause. It is the contention of counsel for the defendants that the payment of the delay rentals was a condition subsequent in the lease, and that failure to make a payment when due rendered the lease void at the option of the defendants. They cite as authority, first, upon this proposition, the case of Benedict v Lynch, 1 Johns. Ch. (N.Y.), 370, 7 Am. Dec., 484, which they assert is the leading case in the United States upon this subject.

In the quotation from this authority contained in brief, concerning when specific performance may be required, it is said at page 375 of 1 Johns. Ch., "where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay; * * * the court will not compel a specific performance."

In the instant case there is no dispute about the facts involved in the failure to make the payment. The plaintiff companies, in addition to the 25-acre tract in question, had the lease of another tract immediately south of the one in dispute, and about the same size. These tracts were originally under one ownership, but the northerly tract, the one in dispute, was sold to the defendant May. These tracts are separated by a public road. In February, 1927, the plaintiffs drilled in the well on the southerly tract, located 127 feet south of the northerly line. That being a producing well, it was not subject thereafter to delay rentals; while the northerly May tract was so subject to delay rentals, no well having been drilled on that lease. The plaintiff companies seem to have had quite an elaborate system of bookkeeping, maps, and records, concerning their respective holdings and duties in relation thereto. A mistake was made in the numbering of these two tracts. The plaintiffs' well was on the southerly tract, properly known as Lease No. 4411-A, but by a mistake this number was placed upon the south tract, and the tract in question was wrongfully numbered 4412-A.

After the drilling in of the plaintiff's well, delay payments should have ceased to Mr. Brown, the owner of the lower tract, and have been continued to Mr. May, the owner of the upper tract, but by reason of this mistake the rental due May 9, 1927, was sent to Mr. Brown instead of the defendant May. Immediately thereafter, being cognizant of the delay rental not reaching Mr. May within the proper time, the defendants got busy, and as a culmination of several transfers the defendant Sturm secured the lease upon which he relies for his title in this case. The plaintiffs knew nothing about this mistake until about two months later, when their office was advised by the defendant Sturm that he had a lease upon this tract of land. The plaintiffs immediately thereafter became busy and discovered the situation, as above stated, tendered payment to Mr. May, and deposited payment for him in the bank, and did everything within their power then to carry out the terms of the lease.

It becomes important in considering the authorities cited to determine whether the single stark proposition of a failure to pay at the precise specified time works a forfeiture of the lease or whether, in an equitable action such as this, the attending circumstances may be or should be taken into consideration to determine whether or not a forfeiture should be declared. In Benedict v Lynch, supra, the authority relied

upon by the defendants, the court in the opinion suggests that forfeiture may be an available right when the other party may not be able "to assign any sufficient justification or excuse for his delay." This authority, therefore, does not recognize absolute right to forfeiture.

Next counsel for the defendants cite **Rummington v Kelley, 7 Ohio, 97, pt. 2,** opinion by Judge Hitchcock, and this is said by counsel citing to be the leading case upon this subject in the state of Ohio. It is not discovered, however, that this decision rendered in 1853 has been cited more than twice by the Supreme Court. It will be borne in mind that the plaintiffs are considered as asking for a specific performance of their lease, and that the defendants are endeavoring to establish a forfeiture of it. In the opinion of Rummington v Kelley, supra, it is said at pages 101, 102:

"That man who would call upon a court of equity for a specific performance must, in the language of the books, show himself to have been 'ready, desirous, prompt, and eager.' * * *

"But although courts of equity are bound equally with courts of law to enforce contracts, still there are cases, and they are not unfrequent, where they will relieve against lapse of time, and decree specific performances. But this is owing rather to the peculiar circumstances of each particular case, than to the consideration that time is not of the essence of the contract. * * * Even where the purchase money is payable in installments, and there should be a failure in the punctual payment of one of these installments, I am not prepared to say that a vendor should be exonerated from performance, if, within a reasonable time, the vendee should make payment. But where either party has been guilty of gross, inexcusable neglect, he cannot obtain relief in a court of equity. It is apprehended that no specific rules can be established with respect to specific performances, which can be applied in every case, but each particular case must be governed more or less upon its own peculiar circumstances."

This decision does not support the contention that a forfeiture may be declared and enforced immediately following a failure in payment without notice thereof and demand of payment, and without regard to circumstances and conditions causing and perhaps excusing the delay. This case is cited in the case of **Higby v Whittaker, 8 Ohio, 198.** In the opinion what has been read from Rummington v Kelley is quoted with approval, and it is further said, referring to the case then under consideration, at page 201 of 8 Ohio: "The complainant has shown no one circumstance to excuse him, and relieve him in equity. The law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply; but it requires eagerness, promptitude, ability, and a disposition to perform, by him who would resist a rescission of his contract."

This authority does not recognize a bald rescission without regard to circumstance or notice.

The next case in which Rummington v Kelley is cited is **Kirby v Harrison, 2 Oh St, 326, at page 332, 59 Am. Dec., 677.** In the opinion of this case it is said:

"Although there is no stipulation of the parties that time shall be of the essence of the contract, nor anything in the nature or circumstances of the agreement to make it so, yet it may be made essential by the proper action of a party who is not in default and is ready to perform, if the other party is in default without justification. Thus, if the vendee, without sufficient excuse, fails to pay at the stipulated time, and the vendor is in no default, and is able and ready to perform all that the contract then requires of him, he may notify the vendee to pay within a reasonable time, or he (the vendor) will consider and treat the contract as rescinded. In such case, if payment be not made within a reasonable time, the vendor has a right to treat the contract as abandoned by the vendee. In like manner, and with like consequences, the vendee may notify the vendor, if the latter is in default and the former is not. * * *

"And where the party in default 'has trifled, or shown a backwardness on his part,' and his default is gross, and the circumstances and value of the property have materially changed, a rescission ought to be decreed."

Later on in this opinion, in making a statement of the case then under consideration, this is said: "And no excuse for the delay is shown." Here again we have recognition of the ordinary duty of notice and recognition of reasonable excuse, and no Ohio authority is cited where the mere

fact of failure to pay at once creates of itself a right of forfeiture.

No reported Ohio case has been found or cited by counsel involving the precise conditions in the instant case. However, there has been furnished to this court the opinion of the Court of Appeals of Licking County in the case of Arthur B. Orr v The Pure Oil Company. This was an action brought against the defendant, the Pure Oil Company, seeking a forfeiture of an oil and gas lease, which varied in no material respect from the lease in the instant case. The rental became due under the terms of the lease on the 17th day of July, and was not received by the owner of the land until the 17th day of August, a default of about thirty days. The lease contained no forfeiture clause. In this case the deferred rental was deposited on the 1st day of July, 1922, in the Franklin National Bank, but through mistake the money was deposited to the credit of Carrie D. Orr. In the opinion it is said: "A mere delay for the matter of thirty days, when it is explained by circumstances such as are sought to be set up in this answer, the court does not think it would be an equitable rule to declare a forfeiture of the lease under those circumstances. If the non-payment had continued for such a length of time through the negligence or delay of the defendant company to pay this rental in justice and equity the court ought to declare it forfeited. But here is a man who was appointed executor, and where there was a confusion of names—so the answer sets up—and there is a mere delay for a period of thirty days due to the mistake. That is a mistake that could be so easily made, and it seems to the court that, in equity, some duty would rest upon the plaintiff in a case of this kind. Can you say that a mistake which could reasonably be made in the exercise of reasonable care, as to keeping alive the lease, and where there was a lapse of a few days by reason of that confusion—can you say that it ought to work an abandonment of the lease? This court does not think so. It would certainly be very harsh and very technical to make that a rule of law. The equities in a case of this kind rest upon both parties to the lease, and the court thinks, to fairly construe and enforce this lease, no forfeiture, if this answer is true, ought to be declared."

Where a first lease contains no clause of forfeiture and provides a specified penalty per annum for delay on the part of the first lessee in beginning the work, neither the lessor nor the subsequent lessee, who stands in his shoes, can recover possession of the premises on account of such delay by first lessees. Thompson v Christie, 138 Pa., 230, 20 A., 934, 11 L.R.A., 236.

Where an oil lease required payment of rentals in advance to continue the lease if a well was not completed within the time fixed, but contained no provision forfeiting the lease for nonpayment on the due date, a delay of a few days only in tendering payment does not terminate the lease, though the lessor may sue lessee for the rentals. Trammel Creek Oil & Gas Co. v Sarver, 197 Ky., 594, 247 SW, 753.

An oil and gas lease binding the lessee to drill a well on the leased premises within a certain period or in lieu thereof make periodical payments of rental or delay money, and containing no clause of forfeiture, is not forfeited merely by nonpayment of the rental. It can be terminated only by surrender, abandonment, or expiration of the term. Reserve Gas Co. v Carbon Black Mfg. Co., 72 W. Va., 757, 79 SE, 1002.

An oil and gas lease on lands in Kentucky was not forfeited for failure to promptly pay the stipulated rental on failure to drill a well within one year, where the letter containing it was undelivered and immediately on its return the money was deposited in bank, as the lease provided might be done. Zeigler v Hopkins, (D. C.), 258 F., 467.

Where an oil lease provides that the lessee shall commence operations within a certain time or pay a fixed sum monthly as rental, but does not provide it shall be forfeited by non-payment of the rental, failure to pay it does not prevent his recovering the premises by ejectment. Marshall v Forest Oil Co., 198 Pa., 83, 47 A., 927.

Other authorities, holding that a failure to pay deferred rentals on the stipulated date, where there is no forfeiture clause in the lease, will not work a forfeiture thereof, are cited as follows: Thornton Oil and Gas, Vol. 1, §180; Smith v People's Natural Gas Co., 257 Pa., 396, 101 A., 739; Jackson v Twin State Oil Co., 95 Okla., 96, 218 P., 324; **Harris v Ohio Oil Co., 57 Oh St, 118,** 48 NE, 502; Wilson v Pernell, 199 Ky., 218, 250 SW, 850; Kies v Williams, 190 Ky., 596, 228 SW, 40; Pryor Mountain Oil & Gas Co. v Cross, 31 Wyo., 9, 222 P., 570; Decker v Kirlicks, 110 Tex., 90, 216 SW, 385; McCallister v Texas Co., (Texas Civ. App.), 223 SW, 859, Smith v Root, 66 W. Va., 633, 66 SE, 1095, 30 L. R. A. (N.S.), 176; Castle Brook Carbon Black Co. v Fer-

rell, 76 W. Va., 300, 85 SE, 544; Davis v Chautauqua Oil & Gas Co., 78 Kan., 97, 96 P., 47; Barnhart v Lockwood, 152 Pa., 82, 25 A., 237; Chandler v Hart, 161 Cal., 405, 119 P., 516, Ann. Cas., 1913B, 1094.

In the case of **Coffinberry v Sun Oil Co.,** 68 Oh St, 488, 67 NE, 1069, wherein an oil lease was considered, which had no forfeiture clause, but provided for the drilling of additional wells for the protection of the lease, and where the lessee refused, and continued to refuse, to further drill and develop or test said lands for oil or gas, and neglected to protect the exterior lines of the leased premises from several producing oil wells in operation on lands adjoining the lands of the plaintiff, it was held, in considering the petition on a demurrer, that if, on the trial, the averments of the petition be sustained by sufficient evidence, in lieu of a decree for specific performance, the lease as to all undrilled lands of the plaintiff should be cancelled; this being the only adequate relief which could be awarded.

A great many authorities have been examined in the consideration of this case, and, while they are not always uniform upon this subject, the great weight of authority seems to be as indicated by the quotations herein above made, that a forfeiture may not be declared for failure to pay deferred rentals where the lease does not contain a forfeiture clause.

There is no contention in this case but that the evidence regarding the circumstances under which the installment of rent due May 9th failed to be paid is substantially as alleged in the petition, the failure being the result of a mistake in numbering of the leases, no notice being given the lessee by the lessor of failure to receive payment, and no demnad being made for payment. The lessee upon discovering the error promptly made all reasonable effort to make the payment.

Counsel in brief cited the following from 40 Corpus Juris, 1073: "Under such a lease time is of the essence of the contract, and the lessee must either engage in drilling operations or pay the specified rental, within the stipulated time. If neither of these options is exercised within the specified period, the lease either terminates or may be forfeited."

What is meant by "such a lease" in the text above is indicated by the citation therefrom to **Kachelmacher v Laird,** 92 Oh St, 324, 110 NE, 933, Ann. Cas., 1917E, 1117, which case involved a lease with a forfeiture clause.

Following the paragraph above quoted, the following appears:

"Under a so-called 'or lease' under which the lessee agrees to complete a well within a specified time or pay a specified amount for the delay, the payment of rentals according to the terms of the lease is not necessary to keep it alive, nor does a failure to develop or pay automatically terminate the lease."

Quoting 40 Corpus Juris, 1080: "In the absence of a provision for forfeiture, the lessor, as a general rule, is not entitled to enforce a forfeiture of an oil or gas lease for the nonpayment of rent or royalties, or for a slight delay therein, through inadvertence or mistake, unless such forfeiture is permitted by statute."

"Although a payment of rentals is not made in the time and manner stipulated, a forfeiture of the lease therefor will not be enforced if the payment is made in good faith and accepted by the lessor, or where under the circumstances it would otherwise be inequitable to enforce the forfeiture, as where default is unintentional and excusable and the lessee has expended considerable sums in developing adjoining tracts, or where time is not of the essence of the contract and the delay in making payment is only a slight one. So, also, a court of equity may grant relief against forfeiture, where the failure to make payment in time is due to some accident or mistake, or is due largely to the fault of the lessor." 40 Corpus Juris, 1080.

In order to effectuate the forfeiture, the lessor must by word or deed manifest in some unequivocal way a purpose to treat the lease as forfeited; the question whether or not a forfeiture has been declared being generally one of fact. Ordinarily he must give notice of his intention to forfeit the lease.

"Ordinarily, in order to enforce a forfeiture, the lessor must demand that the lessee comply with the covenants or conditions of the lease, and give notice of his intention to forfeit the lease for a breach thereof; and where the lease so provides the notice must be in writing. Thus in order that the lessor may enforce the forfeiture or cancellation of a lease which contains an option clause, he must give reasonable notice of his intention to refuse further rentals, demand development, and afford the lessee a reasonable time to explore or develop the premises after such notice, and if the lessee fails to proceed

with such development within a reasonable time thereafter the lease may be forfeited or cancelled." 40 Corpus Juris, 1082.

In the case of Brunson v Carter Oil Co., (D. C.), 263 F., 935, it was held that an "unless lease" for oil and gas was not subject to forfeiture for delay in making the deferred payments, the syllabus reading as follows: "An exploration and development 'unless lease' for oil and gas, for which lessee paid a substantial bonus, with privilege of renewal by payment of a substantial sum annually, **held** a valid mutual contract based on a valuable consideration, and not subject to forfeiture because of failure to make an annual payment in time to a grantee or lessor, where it was in fact made before due, but through mistake of a clerk in failing to make proper entry of transfer of title on the records of lessee the payment was sent to lessor, instead of his assignees."

In the case of Jackson v Twin State Oil Co., 95 Okla., 96, on page 99, 218 P.,324, 327, it is said in the opinion: "We believe the better rule is that, where an oil and gas lease does not provide in express terms for a forfeiture or termination for nondevelopment or nonpayment of rental, and the lessee has paid a substantial amount as cash bonus, the lessor cannot declare a forfeiture for such failure alone, unless such failure continues for such time as to warrant the presumption that the lessee has abandoned the lease or willfully refuses on demand to perform the obligations of the contract."

In Kays v Little, 103 Kan., 461, 175 P., 149, 1 A.L.R., 675, the syllabus reads: "A judgment of a trial court refusing to cancel a gas and oil lease for failure to pay rentals at a stipulated time will not be reversed where the lessee remits the amount of the rental by registered letter so that it will reach the place of payment five days before the time provided for the payment, and the remittance fails to reach that place in time because of delay in the mails, and where, because of other and additional circumstances, it would be inequitable and unjust to cancel the lease."

It is claimed by counsel for the defendants that the plaintiffs had breached and abandoned said lease. Abandonment is the voluntary, intentional relinquishment of a known right. There must be a concurring intention to abandon and an actual relinquishment of the property.

"Abandonment being an unconditional, intentional, and voluntary—never compulsory—relinquishment, is always determined by looking to all of the circumstances of the case, and by considering the acts and declarations of the one who resists the claim of forfeiture." **1 O. Jur., 4.**

"Upon a question of abandonment, as upon a question of fraud, a wide range should be allowed as to the evidence, for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any fact or circumstances from which any aid for the solution of the question can be derived." 1 Corpus Juris, 11.

The undisputed facts as to how the omission to pay the deferred rental occurred have already been stated. Further, in connection with this subject, it is shown by the evidence that all the territory surrounding the two 25-acre leases was "Wild Cat" territory, the nearest producing lease being 3,000 feet away.

The plaintiffs had regularly paid rentals for the protection of the leases from 1919. In February, 1927, the plaintiffs drilled a well on the southerly 25 acres, 127 feet from the partition line, which produced some 4,000,000 cubic feet of gas per day, with a rock pressure of 1,200 pounds. The gas was permitted to flow therefrom four and three-quarters hours on the day of drilling in, and not again until the following December. The defendant Roush, who had secured an interest in the property from May, undertook to execute a lease thereon to one O. H. Early in July, 1927, and Early on the 20th day of that month assigned the same to the defendant Sturm, who, on the 22d day of July, 1927, called with said lease on the manager of the plaintiff the Pure Oil Company, and stated that the company had failed to pay a rental on the May lease and that he had secured it. Representatives of the Pure Oil Company stated that they had no knowledge of such transfers, and upon investigation the mistake in the numbering of the tracts was discovered, and payment was promptly attempted to be made. There is some dispute in the testimony between that of the defendant Sturm and Edward F. Claggett concerning what occurred when Sturm first notified the company that he had secured a lease upon the premises and of the failure of the company to pay the rental.

Claggett testified in effect that he told

Sturm there must be a mistake, and that the matter would be checked up; that the company under no circumstances had any intention of surrendering the lease; that again early in August Sturm called at the office of the company, the situation was discussed, and Sturm was told that "we as lessors would do everything possible in court or otherwise to hold under this lease." This was before Sturm had commenced drilling on the May lease. Sturm denies that Claggett said to him anything to the effect that they were going to fight for the lease. However, from his testimony, there is nothing to indicate an intention not to contest the Sturm lease, and his testimony indicates generally a knowledge that the legality of his lease was denied; that the company was asserting its lease, and would defend it in court and otherwise. The plaintiffs had leases for all of the land adjoining the tract in question, and by the drilling of their well in 1927 had developed the May lease and made it a valuable property. It would be unreasonable under the circumstances for plaintiffs to abandon this valuable lease and subject it to development by Sturm, who drilled a well within about 300 feet of their well, and thereby would drain their other leases and very materially lessen the value of their then existing well. The undisputed facts and evidence in this case do not indicate an abandonment.

Again, it is claimed that the plaintiffs conspired to fraudulently obtain gas from the premises in controversy. No complaint had ever been made to the plaintiffs by the lessor, or any one representing in any way his interest, that this lease was not properly being protected or was subject to improper drainage. This fact does not bring the defendants within the protection of the Coffinberry case, supra. The undisputed evidence with regard to surrounding leases, the time of drilling wells, their location and production, do not substantiate the claim of the defendants in this respect.

The third defense in the answer of the defendants asserts that the plaintiffs are estopped and barred from relief sought by reason of laches and bad faith, and this claim is based upon the assertion, in effect, that, after the plaintiffs had breached and abandoned their lease they did not attempt to revive or reclaim it until after the defendant Sturm had taken a lease thereon, had commenced and prosecuted drilling operations to a considerable extent, and had expended sums of money in this connection. Upon this proposition it is suffi-

cient to say, in addition to what has already been said upon this subject, that Sturm was advised by the representative of the Pure Oil Company, before he had made any expenditures in connection with his lease, in effect, that the plaintiffs were asserting the validity and effectiveness of their lease, and that they would defend it in court and otherwise, and that, if Sturm went to any expense in connection with the matter, he did it at his own peril. Verbal notices were soon followed with a written notice to this effect. The facts in connection with this assertion, instead of being as claimed by the defendants, indicate conclusively that, having discovered that the 9th of May, 1927, had passed without the $6.25 rental being paid, the owner of the land and Sturm got together and acted, with the result that Sturm secured his lease; that he knew that a lease upon this tract of land was valuable, and it seems clear that he was willing to speculate and hazard an expenditure of money upon this lease, knowingly taking his chances as to the validity of the lease of the plaintiffs. This contention of the defendants, likewise, is not well founded.

It is very apparent that all of the dispute concerning this lease, and the litigation connected therewith, is the result of the desire of Sturm to reap where he had not sown, and by reason of what he thought was a defect in the title of the plaintiffs to benefit from the expenditures of the plaintiffs in developing this territory. The whole issue narrows itself down practically to this one proposition, Is the mere failure of the plaintiffs to pay this paltry sum of $6.25, on or before the day on which it became due, sufficient in equity to deprive the plaintiffs of this valuable property created by them? Their excuse for not paying is reasonable. They were eager and willing to pay, and had never received any notice of the failure of payment, to which they were entitled under numerous decisions herein cited.

It is the conclusion of this court, after careful consideration of the evidence and the law relating thereto, that the lease of the plaintiffs was not abandoned, rescinded, or forfeited, but has been at all times since its execution, and still continues to be, an effective, valid and existing lease; that the exceptions of the plaintiffs to the findings of fact of the referee, to the extent that they relate to dispositive or disputed issues, are sustained, and that the exceptions of the plaintiffs to the conclusions of law of the referee are sustained,

they not being proper deductions or conclusions of law upon the issues in this action, and said findings and conclusions of the referee are set aside and held for naught.

This court now determining and deciding the issues in this action finds in favor of the plaintiffs, that their said lease exists in full force and effect, and that they have full title and right to the oil and gas in said premises; that the cloud upon their title, by the lease taken by Perry Sturm, is removed and their title quieted, and that the defendant, Perry Sturm, be enjoined from further operating thereon.

Decree for plaintiffs.

LEMERT, PJ, and SHERICK, J, concur.