SHELL PETROLEUM CORP. et al.
v. HESS et vir.

No. 29234.   Feb. 3, 1942.

Rehearing Denied June 9, 1942.

*126 P. 2d 534.*

Geo. W. Cunningham, W. D. Simms, Edward H. Chandler, Warren D. Abbott, Victor C. Mieher, John R. Ramsey, and Donald Campbell, all of Tulsa, and W. M. Bowles, of Perry, for plaintiffs in error.

Cress, Tebbe & Cress and Henry S. Johnston, all of Perry, for defendants in error.

BAYLESS, J.   Mary M. Hess and William Hess, husband and wife, the

owners of a certain 80-acre tract of land in Noble county, brought an action against Shell Petroleum Corporation et al. to recover damages alleged to have been inflicted upon said land by reason of the pollution of Black Bear creek that runs through the land. The jury's verdict favored plaintiffs, and this appeal followed.

The first proposition urged by defendants involves the correctness of the trial court's ruling in refusing to sustain a plea of res adjudicata. In 1929, the same plaintiffs brought an action against three of the companies defendants in this action to recover damages to the same land from the same source and cause. Later the parties stipulated for a settlement of that action, and in pursuance thereof an order was made dismissing that action "with prejudice." It is the contention of appellants that the settlement therein was for all past, present, and future damages to the land, and the dismissal "with prejudice" was ordered because thereof, and the present action may not be maintained. We are unable to sustain defendants' contention in this respect in the precise and embracive manner they desire. We do not think it necessary to quote the entire stipulation, but we will quote portions thereof that indicate to us that it was not intended as a complete settlement of all future damages and as a bar to any future action. It recites that the pollution of said stream "has thereby caused certain temporary and permanent damages to the lands belonging to said first parties" and "will continue to cause said damage to the first parties for at least a period of ten (10) years from October 1, 1925," and that it is difficult to ascertain the damage and injury that will continue to accrue from said future period, by reason of which, for a consideration stated, settlement is made for damage and injury to lands and personal property that has accrued or may accrue in said period on account of the things recited, and releases the companies for all damage or injury done by past operations, or as "hereafter to be operated by said

second parties for the term aforesaid" or from the escape of pollutive substances from "leases now so operated or to be operated by said second parties or either of them during said term." The continual recurrence of the phrase "during said term" or similar phrases cannot permit any inference other than that the parties were not settling for all future damage that might be done to plaintiffs by reason of the pollution of the creek; and, that the settlement left the plaintiffs free after the ten-year period had expired to prosecute civil action allowed by law for damages done them after the ten-year period. If this settlement agreement is to be given any consideration in attempting to determine the effect of the dismissal with prejudice, it would preclude us from reaching the conclusion that the dismissal with prejudice meant any more than the settlement agreement that preceded it and upon which it undoubtedly was based.

What we have just said does not precisely cover one of the arguments advanced in support of defendants' proposition. It is argued on the basis of our statute, section 422, O. S. 1931, 12 O.S.A. § 684, which was adopted from Kansas and carried with it the controlling effect of the decisions of the Kansas courts construing it, that a dismissal with prejudice by order of court is no less than a judgment, and it is not affected by the agreement of the parties with respect thereto. In this connection, see Turner v. Fleming, 37 Okla. 75, 130 P. 551, 45 L.R.A. (N. S.) 265, Ann. Cas. 1915B, 831. While we recognize the soundness of the rule contended for, we do not feel able to apply it to this record in the final and complete sense that defendants desire.

Since it seems not to be the purpose of plaintiffs, as disclosed by their pleadings, to recover in this action any damages for injuries done during or prior to the ten-year period, which they admitted had been compensated for in the settlement of the prior action, but it is only their purpose to obtain damages for injuries done to them within two

years prior to the bringing of the present action, we think it requires a consideration of the various elements of damages now contended for. This does not mean that plaintiffs may not have mistakenly included elements that are actually barred. A study of the record requires us to treat each element of damages separately, as we do hereinafter under the third proposition. In this consideration, we will, of course, exclude any elements of damages that appear to be barred by a plea of res adjudicata.

The third proposition argued by defendants involves the statute of limitations, subdivision 3, sec. 101, O. S. 1931, 12 O.S.A. § 95. It is argued that the source of damage, the nature thereof, as well as the reasonably foreseeable certainty thereof, were all known to defendants for more than two years prior to the filing of this action.

The parties agree with respect to the rule of law applicable to actions of this type, each of them conceding that under Richards v. Flight, 97 Okla. 9, 222 P. 564; Pine v. Duncan, 179 Okla. 336, 65 P. 2d 492, and other Oklahoma decisions, it is not the time when the stream is polluted that starts the statute of limitations running, but it is "the time the injuries were received and the damages complained of were sustained" or have become obvious. Wilcox v. Juedeman, 187 Okla. 382, 101 P. 2d 1050.

The defendants contend that this stream was polluted as early as 1925, and that damages of the type and character complained of herein were suffered and were known prior to and during the pendency of the earlier action; and that damages of the same type and character were then anticipated thereafter suffered during the ten-year period; and that no injuries or damages are shown in this record that differ from those already existing or that were not to be anticipated and suffered over the ten-year period.

The plaintiffs admit that they were compensated for all damages that had been suffered at the time of the settlement of the prior action, as well as those anticipated during the remainder of the ten-year period; but they insist that immediately following the termination of that period, a new and greater flow of salt water occurred and that new and additional injuries were done to them. Plaintiffs disclaim any effort to recover for injuries prior to the expiration of the ten-year period as the basis of the recovery sought herein.

An analysis of the amended petition discloses that this action is to recover damages for permanent injuries to the tract of land as a unit by reason of the pollution and certain effects therefrom outlined. There is no purpose to recover for the various items of damage shown as separate items, but to recover for their combined effect upon the value of the farm. The utility of the farm as a stock-raising and grazing farm and for allied agricultural uses is first alleged. Then are enumerated several uses or advantages connected therewith that have been lost as a result of the pollution: (1) The use of the creek as the principal source of water supply; (2) the loss of timber adjacent to and along the creek; (3) the blighting of all natural grasses and shrubs on acreage adjacent to and along the creek; (4) the destruction of the fertility of about 40 acres of land; (5) the similar destruction of the fertility of another 27 acres of land; (6) the inability to carry additional livestock owing to the increased pollution; and (7) the contamination of the water well so that it can no longer be used.

The husband testified that the farm was worth $8,000 at the expiration of the ten-year period, and declined $4,000 in value within the two years before this action was filed by reason of the injuries inflicted. The testimony of the husband and that of several of his witnesses establishes that late in 1935, and certainly by spring of 1936, there was a sudden and almost unexplained increase in the flow of clear, salty water in the creek, and that this was lifted out onto his land by the overflow. It is not contended here, as in the recent case of

Shell Pet. Co. v. Kent, 187 Okla. 637, 105 P. 2d 230, that this creek ceased to be polluted and again became usable. We will discuss this aspect of the matter in relation to certain claims of injury, but in view of the Kent Case we thought it well to point out that there is no issue herein regarding the permanency of the pollution of the creek. In the case before us, while it appears that the degree of pollution of the creek varied, and for the last two or three years of the ten-year period it was much less polluted, it is not claimed that the creek again became usable as in the Kent Case. The husband testified that he was forced to fence the cattle away from the creek in 1925 or 1926, and never since that time had he been able to use it for stock.

Since the plaintiffs' evidence clearly disclosed that they had been forced to cease using the water in the creek as early as 1925 or 1926, and they had never been able to use it since, and since it clearly appears from the pleadings in the earlier case and the testimony of the witnesses in this case that the loss of use of the water of the creek was a permanent injury and was an element of damage involved in the earlier action, there can be no recovery therefor herein. Res adjudicata or limitations either would preclude this.

It likewise appears that the loss of timber and grass and shrubs adjacent to and along the creek was an element of damage in the earlier action, and is also in this case, and there can be no recovery therefor herein unless the evidence discloses their present injuries were not involved in that action and were not to be anticipated thereafter in the sense of being obvious. The undisputed evidence of plaintiffs is that the timber, grass, and shrubs had begun to die and to disappear as early as 1926, and that this continued to an increasing extent during the years, and following the expiration of the ten-year period increased to an alarming extent. The testimony of the witnesses does not clearly place these trees, etc., as being wholly within or without the area adjacent to the creek that is annually overflowed. Since the bulk thereof appear to have been within that area and since plaintiffs' theory is that salt or other deleterious substances from the polluted creek caused this destruction, we must assume that it is not contended that these destructive substances caused the death of growing trees and plants on soil not contaminated. Whether there is sufficient evidence to show that all of these trees and growing plants died from the effects of the pollutive substances, irrespective of where they were located, is immaterial in view of our opinion that these elements of injury were known or were anticipated as reasonably obvious at the time of the settlement of the prior action, and became obvious during the year that followed.

The same facts are true with respect to the injury claimed to have been done to the fertility of certain soil. As pointed out, it was pleaded that 67 acres, or more, were thus affected. At the time of the trial the plaintiffs testified positively, and it is not contradicted, that the soil adjacent to and along the creek that was affected was only about 15 acres, more or less, in extent, and that it was the identical land the fertility of which had been destroyed in 1925 or 1926, and involved in the prior action. There was some testimony that although there were overflows during these years from 1925 to 1937, this particular 15 acres had begun to regain some of its lost fertility. However, from the testimony relating to the attempts to use it for wheat, it is plain that these 15 acres had not regained a reasonably usable condition, and that nothing of value had been produced on them. We are of the opinion that the settlement previously made precludes including these 15 acres as an element of recovery herein. Plaintiffs do contend, under Wilcox Oil & Gas Co. v. Murphy, 186 Okla. 188, 97 P. 2d 84, that although certain permanent damages have been recovered because of pollution, nevertheless this does not bar an action for injury to a second or additional area. We think this is sound, but that it is not applicable under plaintiffs' record. We do not find that they have shown any dam-

age to land outside of the area clearly involved in the prior action, and that the injuries shown herein amount to no more than a continuation of the prior injuries and damages, and that such were anticipated by the parties at the time of the settlement of the prior action, and have been obvious for more than two years, for which reason the statute of limitations would not permit a recovery therefor even if they had not been settled for therein.

We find no evidence to support the charge that after the expiration of the ten-year period, plaintiffs were prevented from using this farm for stock-raising or -grazing purposes as a result of the pollution by anything peculiar to the situation in the two years prior to the bringing of this action. It is true that there is evidence of the loss of cattle in 1934, 1935, and 1936, by reason of drinking from this creek. It was admitted that it was known, then that the creek water was not fit for the animals to drink, and they drank the water despite the efforts of plaintiffs to prevent them. While it may be inferred from this that this farm was not usable for stock-raising purposes as it would be if the creek were not polluted, this was not a new condition but one that had existed at all times. Never since 1926, by plaintiffs' own testimony, had this farm been benefited by the use of this creek to water stock.

Much evidence appears in the record relating to the sloughing away of the creek banks, and the widening of the creek bed with the consequent loss of land. This element of damage was not specifically pleaded. In addition, it consists of land adjacent to the creek, the fertility of which had been previously destroyed and damages allowed therefor. If this wearing away process had gone to the extent of passing beyond the boundary of the 15 acres compensated for previously, and had actually encroached on land not previously affected, it could be used as an element of recovery herein. Wilcox v. Murphy, supra. The record does not so show.

This brings us to the matter of the contamination of the well, an element of damages pleaded. There is evidence that the water of a well located near the house became brackish and unusable; no effort was made to attribute this to the polluted condition of the creek. Shell Pet. Corp. v. Blubaugh, 187 Okla. 198, 102 P. 2d 163. Neither of the parties discusses this aspect of the case in the briefs, and we pay no further attention to it.

Since the damage sought and allowed as the diminution in value of their farm, and since the evidence relating to the various elements of injury testified about cannot be considered for the reasons stated above, we must reverse the judgment.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, and GIBSON, JJ., concur. HURST and ARNOLD, JJ., dissent. DAVISON, J., absent.

---

ARNOLD, J. (dissenting). I cannot agree with the majority opinion in this case for the reason that there is sufficient competent evidence disclosed by the testimony of the plaintiffs to justify the submission of this cause to the jury. The verdict of the jury and the judgment of the court rendered thereon should be sustained.

I respectfully submit the following pertinent facts based on the record in this case: For some 30 years the plaintiffs were the owners of an 80-acre tract of land in Noble county traversed by Black Bear creek. The Garber-Covington oil field was discovered about 1918 and is in close proximity and upstream from the farm in question. In 1925 a deeper oil field was discovered therein and the production therefrom greatly increased. With this new production of oil, salt water in large quantities was produced and as a result thereof Black Bear creek was polluted by large amounts of salt water and refuse. This

pollution greatly damaged the various farms traversed by Black Bear creek. In 1927 a suit was brought by the plaintiffs for permanent injury to their land. In 1929 a written contract of settlement was entered into covering a ten-year period, October 1, 1925 to October 1, 1935, for "all damages and injuries" to their land and personal property "that have accrued and may accrue from the date hereof." By the terms of this contract the plaintiffs settled in advance for any and all injuries to their land or personal property by reason of the pollution of the stream by a part of the defendants in this case and certain other parties named in said contract existent at the time of the making of the contract or that might occur by reason thereof up to October 1, 1935; whether any increased damage during said period should occur by reason of the existent pollution or an increase in pollution thereafter, but within the term of the contract and before October 1, 1935, would make no difference, and the plaintiffs could not again complain thereof. All damages existent to the land or personal property of the plaintiffs on October 1, 1935, were already paid for. However, the record in this case discloses that by 1930 the operators in the Garber-Covington field had learned how to control and dispose of salt water in a better manner than theretofore, and by reason of the use of new methods of control and disposal the pollution in said creek was continually diminished, so much so, in fact, that by 1935 the water in said creek was again usable a great part of the time; that the overflow land had begun to show signs of a return to normal productivity; that the vegetation along the creek banks was almost back to normal and the sloughing off of the creek banks had decreased in the meantime until it was negligible; that in 1934 and 1935 the Pollo oil field, between the Garber-Covington field and the farm in question, was discovered and developed; that in the late fall, around November 1, 1935, the pollution of said creek was again greatly increased by another influx of salt water again rendering the water unusable; that this new influx of pollution occurred after the expiration of the contract period; that the situation continued to the date of the trial in October, 1938; that there were several highwater overflows during this period, causing the water to back over various portions of the land involved; that the wheat planted on the overflow land did not mature; that the trees began to die in great numbers; that the vegetation along the creek banks died and the banks of the creek sloughed off in great quantities; that by reason of the new pollution, additional permanent damage resulted to the land; that 1935 and 1936 were dry years and water in the creek was very low and the extent of the pollution was obvious.

The testimony discloses the difference between the market value of the land just prior to the flood and at the time of the trial. The verdict of the jury was in the amount of $2,250, which is less than the amount sued for and less than the proof by the plaintiffs shows the damage to be. There is no contention herein that this amount is excessive. The court instructed the jury "the plaintiff must present his action within two years from the time it becomes obvious to a prudent person that the injury is a permanent one." Instructions Nos. 12, 13, and 14 properly instruct the jury as to the prior settlement and limited the plaintiffs in their recovery to distinct, additional, permanent damages inflicted upon said land after October 23, 1935. This brings the plaintiffs' recovery within the statutory limitations period and properly restricts them to recovery only for injuries inflicted wrongfully after the expiration of the period of settlement. Why did these parties enter into a ten-year contract? Simply because they anticipated further and additional injury by reason of pollution. They limited their anticipation and the obviousness of existing injuries to ten years.

The plaintiffs having shown an additional pollution resulting in additional permanent injuries to their land occurring after October 1, 1935, this case was

properly submitted to a jury for determination of the amount of injury flowing from said additional pollution. I, therefore, respectfully dissent.