2003 OK 69

**Alfred William SISK, Plaintiff/Appellee,**

**v.**

**J.B. HUNT TRANSPORT, INC.,
Defendant/Appellant.**

No. 94,288.

Supreme Court of Oklahoma.

July 8, 2003.

Rehearing Denied Nov. 24, 2003.

James C. Daniel, Daniel, Baker & Howard, Tulsa, OK, for Appellant, J.B. Hunt Transport, Inc.

Tim Maxcey, Stipe Law Firm, McAlester, OK, attorney for Appellee, Alfred William Sisk.[1]

Rex K. Travis, Oklahoma City, for amicus curiae, Oklahoma Trial Lawyers Association.

Karen M. Grundy and Jon Starr, Tulsa, for amicus curiae, Oklahoma Association of Defense Counsel.

### ORDER

Rehearing is granted. The opinion of the Court issued on February 5, 2002 is withdrawn and the opinion filed today is substituted therefor. The vote below is on the grant of rehearing only. The vote on the substituted opinion is shown thereon.

WATT, C.J., OPALA, V.C.J., LAVENDER, KAUGER, SUMMERS, BOUDREAU, JJ., concur.

HODGES, HARGRAVE, WINCHESTER, JJ., dissent.

OPALA, V.C.J.

¶1 Today's controversy presses for our decision but a single question: Whether a plaintiff's second dismissal of a time-barred claim against a co-defendant's servant operates, in fact and in law, **to release the defendant/master** by operation of the common-law rule that a servant's dismissal by the act of a plaintiff also operates to release the master's liability and to extinguish the tort claim where the claim is advanced on servant's negligence alone? **We answer in the affirmative and give today's pronouncement** purely prospective application—one that will apply solely to claims arising after the effective date of today's opinion.

### I.

### THE ANATOMY OF THE LITIGATION

¶2 William Alfred Sisk (plaintiff or Sisk) was injured in a vehicle/pedestrian collision on 10 November 1994 when he was struck by a tractor-trailer vehicle owned by J.B. Hunt Transport (defendant, master or Hunt) and operated by the latter's employee, Aristille Courville, Jr. (defendant, servant or Courville). Sisk brought a negligence action against Courville and Hunt for damages from bodily injuries allegedly occasioned by Courville's negligence. Sisk averred no independent negligence by Hunt. **Suit against the latter rests solely on the theory of respondeat superior.** On 26 August 1997 Sisk dismissed his action without prejudice and then refiled it by invoking the provisions of 12 O.S.1991 § 100,[2] the savings statute.

¶3 Immediately before trial the plaintiff once again dismissed Courville "without prejudice." Because this was a second § 100 dismissal[3] of Courville, Hunt asserted that the action had failed because under the doctrine of respondeat superior the master no longer bore liability. Hunt moved that the action be dismissed and judgment entered in its favor. Sisk maintained that, regardless of Courville's absence from the suit, Hunt continued to bear vicarious liability. The trial court overruled Hunt's argument and concluded Sisk's dismissal was "with prejudice" as a matter of law.[4] The jury returned a verdict for Sisk and awarded him $800,000.00 in damages (to be reduced proportionately by its finding of 30% contributory negligence by

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. The text of 12 O.S.1991 § 100 provides:
   "If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, ... may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed." (textual alteration supplied)

3. The terms of 12 O.S.1991 § 100, the "savings statute," which allow an additional one year to bring a new action after an earlier suit fails otherwise than upon its merits, affords only one refiling opportunity after the statute of limitations has run. *Hull v. Rich,* 1993 OK 81, ¶6, 854 P.2d 903, 904; *Ashby v. Harris,* 1996 OK 70, ¶6, 918 P.2d 744, 747; *United States Fire Ins. Co. v. Swyden,* 1935 OK 1191, ¶21, 53 P.2d 284, 288, 175 Okl. 475, 478.

4. Transcript Vol. 1, p. 3. For the terms of § 100, the savings clause, see *supra* note 2.

Sisk). Hunt moved for a directed verdict, for judgment notwithstanding the verdict and for a new trial. All these motions were overruled. Hunt appealed.

¶4 The Court of Civil Appeals (COCA), Division II, affirmed the nisi prius denial of Hunt's motions. It noted that extant jurisprudence teaches that where master and servant are proceeded against jointly, and the master's liability rests solely on respondeat superior, a servant's *dismissal without prejudice* does not bar the action against the master[5] although no decisional law could be found holding that master's release would be effected upon a servant's *dismissal with prejudice.* Because, as COCA noted, extant jurisprudence on principles of respondeat superior permits an action against the principal alone where no suit is brought against the agent,[6] it reasoned that Sisk's decision (not to pursue his claim against Courville) would not bar the action against Hunt. Although COCA noted that other jurisdictions were divided about the issue of the release rule's application upon a dismissal with prejudice, it concluded Sisk's dismissal of the servant *with prejudice* did not release Hunt Transport from its respondeat superior liability.

## II.

### THE PARTIES'S RESPECTIVE POSITIONS ON CERTIORARI

¶5 Hunt contends that, although COCA was correct in characterizing Sisk's second dismissal as one "with prejudice,"[7] it is the legal effect of the instrument, not that of the pleader-chosen title, that controls here. The legal effect of the second dismissal—after the savings statute has earlier been invoked—prevents reinstitution of the action against Courville. This completely releases Courville and bars further legal action upon Sisk's claim against Courville. Hunt relies on *Mid–Continent Pipeline v. Crauthers,*[8] and *Burke v. Webb Boats, Inc.*[9] to establish that a servant's release releases the master who is proceeded against for vicarious liability's imposition. Hunt concludes Sisk's claim against it stands extinguished by operation of law.

¶6 Sisk asserts that COCA's characterization of his dismissal as "with prejudice" is erroneous. This is so because Sisk's dismissal expressly states it is "without prejudice," and his motion rests upon the provisions of 12 O.S.1991 § 683,[10] whose text provides no limitation whatever on the number of times a plaintiff may dismiss an action without prejudice. Sisk continues that the true bar to any further action against Courville is the expiration of the statute of limitations coupled with his inability to bring, more than once, a refiled claim under § 100.[11] It is this procedural bar, based on policies of repose, that prohibits a third action against Courville, not the dismissal. These policies should have no

---

5. *Employers Cas. Co. v. Barnett,* 1951 OK 186, ¶¶11–13, 235 P.2d 685, 689–90. COCA opinion p. 6–7.

6. For this proposition COCA relies on Hooper By and Through *Hooper v. Clements Food Co.,* 1985 OK 6, ¶5, 694 P.2d 943, 944 (citing *Employers Cas. Co., supra* note 5, at ¶5, at 689–90).

7. Defendant's materials (citing BLACK'S LAW DICTIONARY (5th ed.)) provide that the terms "with prejudice" and "without prejudice" denote whether the action may be reinstituted.

8. *Mid–Continent Pipeline Co. v. Crauthers,* 1954 OK 61, ¶24, 267 P.2d 568, 571, teaches that where the master is liable to a third party for the negligence of his servant solely because of the respondeat superior doctrine, and no independent negligence by the master is alleged, a valid release of the servant from tort liability operates to release the master.

9. *Burke v. Webb Boats,* 2001 OK 83, ¶12, 37 P.3d 811, 814, stands for the proposition that one vicariously liable in tort is not a "tortfeasor" within the meaning of the Uniform Contribution Among Tortfeasors Act (UCATA), 12 O.S.2001 § 832, and, hence, the UCATA provision, stating the release does not discharge other tortfeasors from liability, will not apply to the vicariously liable party.

10. The text of 12 O.S.1991 § 683 provides:

    "An action may be dismissed, without prejudice to a future action:
    First, By the plaintiff, before the final submission on the case to the jury, or to the court, where the trial is by the court. * * *
    Sixth, In all other cases, upon the trial of the action, the decision must be upon the merits." (textual alteration supplied)

11. For the text of the savings statute, see *supra* note 2.

bearing on his claim against Hunt, which was brought within the applicable time limits. Because his second dismissal should be denominated as one "without prejudice," Sisk contends his case is controlled by *Employers Cas. Co.*,[12] and we should let COCA's decision stand. Sisk urges alternatively he may continue to proceed against Hunt upon the respondeat superior principles espoused in *Hooper*.[13] This is so because it is only Courville's liability that is extinguished by Sisk's second dismissal. Although Courville no longer stands liable to Sisk, his negligence may still be imputed to Hunt and the action against Hunt may hence continue.[14]

## III.

### THE COMMON–LAW RULE—THAT RELEASE OF THE SERVANT RELEASES THE VICARIOUSLY LIABLE MASTER—OPERATES HERE. PLAINTIFF'S AFFIRMATIVE ACT TRIGGERED THE PROVISIONS OF § 100 AND EXTINGUISHED HIS CLAIM AGAINST THE SERVANT.

■ ¶ 7 The answer to the question posed by today's certiorari must rest on the common-law doctrine of respondeat superior. When a claim alleges, and presses for imposition, a master's vicarious liability (based solely on a servant's negligence)—i.e., one from which master's negligence is absent—the claim is one predicated on master's vicarious liability known to the Anglo–American legal system as respondeat superior.[15] This common-law doctrine teaches that an effective release of the servant operates to release the master.[16]

12. See Section I of this opinion, The Anatomy of the Litigation, for the teachings of *Employers Cas. Co.*

13. For plaintiff's arguments based on *Hooper's* language, see *infra* note 14.

14. Plaintiff's theory—that Courville's negligence, and not his liability, is imputed to Hunt—is bottomed upon language found in *Hooper, supra* note 6, at ¶ 9, at 945.

"Under respondeat superior, the negligence or wrongful act, as opposed to the civil liability of the servant, is imputed to the master. Thus, a finding of no negligence on the part of the servant, conclusively negates the liability of the master. (Citations omitted.) However, a finding of no civil liability on the part of the servant does not necessarily negate the liability of the master. It is the servant's negligence or wrongful act which establishes the master's liability, not the servant's own civil liability. Therefore, the servant's status in relation to the injured person is not determinative." (textual alteration supplied)

15. Legal historians do not agree on the origins of the modern doctrine of vicarious accountability in Anglo–American law. This liability is described by a fictitious identification of servant with master—*respondeat superior* (let the superior answer) or of agent with principal—*qui facit per alium facit per se* (he who acts through another acts for himself). For a brief but profound discussion of the doctrine's historical antecedents see Fowler V. Harper and James Fleming,

Jr., LAW OF TORTS, § 26.2, at 1364–66 (1956) and Stuart M. Speise, Charles F. Krause, and Alfred W. Gans, THE AMERICAN LAW OF TORTS § 4.2, at 533–37 (1983).

The term "vicarious" means "[p]erformed or suffered by one person as substitute for another; indirect; surrogate." BLACK's LAW DICTIONARY 1560 (7th ed.1999).

16. This common-law rule stands unaltered and in full force. *Mid–Continent Pipeline, supra* note 8, at ¶ 24, at 571, and *Burke, supra* note 9, at ¶ 12, at 814.

Although we do not deal here with joint tortfeasors, the original common-law release rule—that a release of one joint tortfeasor, if meeting certain formal requirements, releases all, appears to have been based upon the unity-of-injury concept and that the injured party is entitled to only one compensation. Both make it impossible for the injured person to release one tortfeasor without also discharging the other. Vitauts M. Gulbis, *Release of, or Covenant Not to Sue, One Primarily Liable for Tort, but Expressly Reserving Rights Against One Secondarily Liable, as Bar to Recovery Against the Latter*, 24 A.L.R.4th 547, 1983 WL 190954 (1983) and V. Woerner, Annotation, *Release of (or Covenant not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d 533, 1963 WL 13683 (1963). The author of the latter article, the American Law Reports Annotation, states that most cases decided in the absence of a specific statute support the view that a valid release of one of the parties to the master-

¶ 8 The release requirement manifests itself here in somewhat unusual circumstances. The master's release **results from the plaintiff's second dismissal of the claim against the servant after limitations have run.** Simply put, the dispositive question in today's controversy is whether the *ex lege* bar from the plaintiff's second dismissal operates by force of law as an effective release of the claim against the servant. We hold that it does.

¶ 9 The early common-law release concept included the notion that a "release" flows from the abandonment or extinguishment of a claim, and that following the release of one tortfeasor, there is no residual claim to be sued upon against another.[17] Whether Sisk's second dismissal was labeled "with" or "without prejudice" is immaterial here.[18] *The legal consequence of plaintiff's second dismissal must be considered against the backdrop of the effect it has on the plaintiff's capacity to refile the claim.* Neither the plaintiff-worded motion for the servant's dismissal nor its effect under § 100 is to be tested in a pure vacuum.

¶ 10 Plaintiff's affirmative act of dismissing (for the second time) the servant from suit at once triggered the restrictive refiling opportunity afforded by the § 100 provisions. That opportunity is undeniably gone, and recommencement of this action against Courville cannot be accomplished. It is the recommencement bar, *raised by plaintiff's own act of his second dismissal,* that, in fact and in law, extinguishes his claim against the servant. When viewed in the light of a two-prong analysis, the release rule's operation at once becomes crystal-clear. *A plaintiff's affirmative act must occur first; its required effect—one that must follow next—must be that of reprosecution's absolute bar.* To destroy a servant's liability, both elements must coincide. **Today's scenario is readily dis-**

servant relationship releases the other. *Woerner, supra,* at 537.

A master who stands liable only vicariously for the tort of the servant is not to be included within the definition of "tortfeasor" under the Uniform Contribution Among Tortfeasors Act (UCATA), 12 O.S.2001 § 832. The common-law release rule is applicable to a master whose liability is purely derivative and hence does not stand from the master's independent act of negligence. See *Burke, supra* note 9, at ¶ 12, at 814.

17. See *Gulbis, supra* note 16, at 551, at § 2(a). BLACK'S LAW DICTIONARY 1292 (7th ed.1999) defines "release" as the "relinquishment or concession of a right, title or claim."

In an effort to ameliorate the harshness of the common-law release rule's application, some jurisdictions have rejected it or distinguished a "release" from a "covenant not to sue" in order to lessen its rigidity. Other states have instituted legislative changes and adopted statutes based on the National Conference of Commissioners on Uniform State Law's version of the Uniform Contribution Among Tortfeasors Act (which provides a release or covenant not to sue one of several persons liable in tort for the same injury does not discharge any other tortfeasor unless its terms so provide). *Gulbis, supra* note 16, at 551–54, at § 2(a). While we note a broad and diverse disagreement among jurisdictions that have adopted such statutes as to whether their terms apply to those whose tort liability is purely derivative in nature, Oklahoma has settled this question. *Burke, supra* note 9, at ¶ 8, at 814. For a compilation of the divergent holdings among the states regarding the common-law release rule see *Gulbis, supra* note 16, at 551, at § 2(a); *Woodrum v. Johnson,* 210 W.Va. 762, 559 S.E.2d 908, 913–14

(2001) (holding a release of the servant who is primarily liable for a plaintiff's injury does not operate to release the secondarily liable master); and *Burke, supra* note 9, at ¶ 8, at 814.

18. While neither party to today's controversy agrees with the other that plaintiff's second dismissal is either "with" or "without prejudice," *both concede that plaintiff is barred from instituting an action upon the dismissed claim against the servant.*

Resolution of today's issue does not require that we settle the question whether plaintiff's dismissal is to be characterized as one "with" or "without prejudice." We note that there is a split among the authorities which have considered this issue and the axiomatic application of the common-law release rule to this circumstance. *De Graff v. Smith,* 62 Ariz. 261, 157 P.2d 342 (1945) (where plaintiff dismissed with prejudice a claim against a driver, plaintiff could not recover from the owner, since he was not a joint tortfeasor and his liability was solely derivative); *O'Dell v. Universal Credit Co.,* 118 W.Va. 678, 191 S.E. 568 (1937) (in a joint action against master and servant, where the master's liability lies solely in respondeat superior, the plaintiff may dismiss the servant for reasons not going to the merits without impairing his right to proceed against the master); *Brosamle v. Mapco Gas Products, Inc.,* 427 N.W.2d 473 (Iowa 1988) (a dismissal with prejudice filed without settlement or adjudication of employee's fault was intended merely to terminate the possibility of future litigation against the employee and could not serve to bar future adjudication on the merits of the claim against employer); *Cantrell v. Henderson,* 221 Mont. 201, 718 P.2d 318 (1986) (in a joint action against employee and employer, a dis-

tinguishable from all those in which a **plaintiff takes no affirmative step or no plaintiff's act extinguishes a servant's liability.**[19] Sisk's own act triggered the bar to reprosecution that extinguished his claim against Courville.[20] A bar that arises by force of law from a plaintiff's voluntary act of dismissal is as effective as any other form of express release that would extinguish the claim against the servant.

¶ 11 That the servant is now beyond the reach of any suit upon Sisk's claim is the undeniable consequence of plaintiff's dismiss-

al. The release rule must hence govern this controversy. Uninterrupted viability of the claim against a servant is the *sine qua non* of the master's continued liability in respondeat superior.[21] Once, **by an act of the plaintiff,** the servant becomes impervious to legal responsibility, the master stands released.

¶ 12 Plaintiff's reliance on *Hooper's* language—that it is the servant's negligence that is imputed to the master and not the servant's liability—to support his contention that he may now proceed solely against the master is misplaced.[22] *Hooper* neither deals

missal of the employee which did not specify whether it was with or without prejudice did not exonerate employer); *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir. 1991) (a plaintiff's decision to dismiss with prejudice the employee/servant is fatal to the claim against the vicariously liable employer/master).

19. The former situation, in *Hooper, supra* note 6, addressed whether a harm-dealing servant's law-conferred (parental) immunity operates to discharge the master's respondeat-superior liability to a third party. In *Hooper* we answered in the negative by holding that servant's law-conferred immunity does not constitute an *ex lege* release of the master. The question in *Hooper* deals neither with a plaintiff's affirmative act of releasing a servant *qua* actor nor with the master's post-release liability.

The latter situation was addressed in *Employers Cas. Co., supra* note 5, at ¶¶ 11–12, at 689–90. *Employers Cas. Co.* "stands for the rule that an employer and his employee may be proceeded against jointly or severally where employer's liability is based on doctrine of respondeat superior, and where proceeded against jointly, dismissal without prejudice as to employee does not preclude prosecution of action against employer." *Massoth v. Staples*, 1971 OK 12, ¶ 16, 481 P.2d 141, 144.

20. One dissenter, who disagrees in part with today's opinion, articulates the view that § 100 is a statute of limitation and hence must be pled. If pled, the bar must then be sustained before plaintiff's remedy is extinguished. Until that time, he asserts, neither plaintiff's right nor his remedy stands extinguished. This approach makes as little sense as it would if, in this case, there was a written release of the servant and the court took the position that the release is not effective until it is interposed in a court case and is sustained by the trial judge. The release is effected when a dismissal that operates to bar reprosecution is filed. Moreover, extant jurisprudence that addresses an earlier codification of our savings statute pronounces that "[s]tatutes permitting filing of new actions after the original period of limitation are not ordinarily considered

statutes of limitation with the same meaning and dignity of original statutes of limitation." *Swyden, supra* note 3, at ¶ 14, at 286.

In short, § 100 extinguishes plaintiff's remedy but does not destroy his right. In order to satisfy the common-law release rule it is enough that the remedy against the servant is extinguished. Survival of an unextinguished right does not bring the case outside the release rule. Litigants waging forensic combat in the common-law system, must be armed with both an effective remedy and a viable right. *United States Through Farmers Home Administration v. Hobbs*, 1996 OK 77, ¶¶ 1–8, 921 P.2d 338, 345 (Opala, J., concurring in judgment but not in the court's opinion).

21. In *Land v. United States*, 231 F.Supp. 883, 886 (U.S.D.C.N.D.Okla., 1964), Oklahoma's common-law release rule was viewed to have been triggered by a covenant not to sue (referred to in the opinion as synonymous with a covenant not to execute). The court quoted from *Max v. Spaeth*, 349 S.W.2d 1 (Mo.1961), where it stated, "It matters little how the servant was released from liability; as long as he is free from [legal] harm, it appears to us that his master should also be held blameless." (emphasis supplied) Holding the common-law release rule applicable to one whose liability is solely derivative, the court in *Arundel Medical Center, Inc., v. Condon*, 102 Md. App. 408, 649 A.2d 1189, 1196 (1994), stated, "[t]he release of the agent removes the only basis for imputing liability to the principal." (citing *Theophelis v. Lansing General Hosp.*, 430 Mich. 473, 424 N.W.2d 478, 486 (1988)).

Cases holding that where a servant is released or is otherwise free from legal harm, the master, whose liability is derivative, should be blameless as well are generally rested on one of two principles. The first is that such a result avoids circuity of action; the second, that exoneration of the servant removes the foundation upon which negligence may be imputed to the master. *Holcomb v. Flavin*, 34 Ill.2d 558, 216 N.E.2d 811, 815 (Ill.1966).

22. The court's broad language in *Hooper, supra* note 14, which permits an action to proceed against the master (under the doctrine of respondeat superior) based on the servant's imputed negligence rather than upon the servant's liability, is *obiter dictum*. Isolated passages do not transmogrify the common-law rule. We note

with nor impacts the release rule. It employs the accepted fiction (underlying the doctrine of respondeat superior) when an action is brought solely against a master.[23] Oklahoma's extant jurisprudence, expounding the common-law release rule, stands unabrogated and controls today's controversy. In short, plaintiff's dismissal operates by force of § 100 as an effective bar to the claim's reprosecution against the servant. **This bar stands erected by the plaintiff's own act.** The act makes the common-law rule operative.

■ ¶ 13 Today's controversy is resolved by application of the time-honored rule of stare decisis.[24] Only those precedents that are patently bad should be altered by judicial correction.[25] Plaintiff urges the result of today's holding is unduly harsh. It will require that future litigants name every potential servant as a litigant in cases based upon the doctrine of respondeat superior. He also asserts that today's reasoning will lead to disastrous consequences where a master only is sued and the statute of limitations expires prior to trial. Plaintiff's concern for suits

where the master alone stands as defendant in the case is misplaced. Today's holding neither modifies Oklahoma's extant jurisprudence nor applies to situations where no *affirmative act* of the plaintiff bars an action against the servant.[26]

■ ¶ 14 The common-law is, of course, always subject to abrogation by legislation. Generally, when a statute or rule of law appears obscure in its impact on the case at bar we will give the pronouncement prospective effect to protect those who would otherwise suffer from the law's abstruse contours.[27] For the sake of affording even-handed fairness, implicit in this state's judicial process, we give today's opinion purely prospective effect. It will govern only those claims which will arise after the effective date of this pronouncement.

¶ 15 We express no opinion upon the mid-trial errors re-urged by Hunt's certiorari petition. Our certiorari grant stands confined to the single issue—whether the common-law release rule governs this case.[28] Neither is

further that *Hooper's* plaintiff was not *fully barred* from all recovery against the parent/servant. His liability was not completely extinguished. *Hooper, supra* note 6, at ¶ 5, at 944.

**23.** For an explanation of this fiction's origin see *supra* note 15.

**24.** Stare decisis serves to remove any capricious element from the law and give it stability. *Rodgers v. Higgins*, 1993 OK 45, ¶ 28, 871 P.2d 398, 412 (citing William O. Douglas, Stare Decisis, 49 Colum. L.Rev. 735, 736 (1949)).

For a discussion of considerations the justices of the United States Supreme Court must weigh when called upon to reassess their commitment to a prior holding see *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854, 112 S.Ct. 2791, 2808–09, 120 L.Ed.2d 674 (1992).

**25.** *Rodgers, supra note* 24, at ¶ 28, at 412 (citing *Edge v. Smith*, 1955 OK 123, ¶ 27, 284 P.2d 711, 715 (1955); *Jackson v. Twin State Oil Co.*, 1923 OK 542, ¶ 22, 218 P. 324, 328, 95 Okl. 96 (1923); *Webb v. Semans*, 1925 OK 147, 235 P. 1074, 1077, 110 Okl. 72 (1925)).

**26.** Extant law is not changed by today's decision, but, until this opinion, it did not clearly appear from Oklahoma's jurisprudence that the effect of a plaintiff's voluntary act that triggers a bar to reprosecution of the servant releases the servant and the master as well.

**27.** When called upon to settle the meaning of not-so-readily intelligible or not-so-clearly settled

legal norms that are a veritable trap for the unwary, the court will give its pronouncement purely prospective effect in order to save the parties from the unforeseen impact of an obscurely worded regime of rules. *Isbell v. State, Etc.*, 1979 OK 156, ¶ 1, 603 P.2d 758, 760–61 (Opala, J., concurring specially). In giving purely prospective effect to today's pronouncement we follow the precedent set by *Poafpybitty v. Skelly Oil Company*, 1964 OK 162, ¶ 19, 394 P.2d 515, 520 (the court applied prospectively its pronouncement on whether errors of law may be saved for review by their inclusion in a motion for new trial). *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 12, 979 P.2d 252, 257; and *Hale v. Bd. Of Cty. Com'rs of Seminole County*, 1979 OK 158, ¶ 4, 603 P.2d 761, 764. Prospective application of a decision is not reserved solely for situations that deal with conflicting statutes nor with interpretation of a legislative ambiguity. It is equally commended to those situations where issues of first impression are not clearly foreshadowed by decisional law and where it serves to protect the public's reasonable expectation of reliance on prior judicial decisions. *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, 1986 OK 16, ¶¶ 19–22, 732 P.2d 438, 446–49.

**28.** Hunt's certiorari petition contends COCA failed to address his assertion that Sisk's inaction in failing to supplement his interrogatory response constitutes extrinsic or intrinsic fraud (citing *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 25, 987 P.2d 1185, 1196). COCA's

there any need to address Hunt's final challenge—that COCA credits as *evidence statements* made by Sisk's lawyer during oral argument to the appellate tribunal. Record evidence is sufficient to support COCA's decision.

## IV.

## SUMMARY

¶ 16 We hold today the *ex lege* bar from the plaintiff's voluntary act (of a second dismissal of Courville) operates at common law as an effective release of Sisk's claim against the servant. It is the § 100 recommencement bar, raised by the plaintiff's own act of dismissing the servant that, in fact and in law, also extinguishes his claim against the vicariously liable master. When a servant is effectively released, his master, whose liability is solely derivative, stands released as well. Today's pronouncement is given purely prospective effect. It shall govern only those claims which will arise **after mandate has been issued herein.**

¶ 17 **On certiorari previously granted, the Court of Civil Appeals' opinion is vacated and judgment of the trial court affirmed.**

¶ 18 HODGES, LAVENDER, HARGRAVE AND WINCHESTER, JJ., concur.

¶ 19 KAUGER and BOUDREAU, JJ., concur in part and dissent in part.

¶ 20 SUMMERS, J., concurs in affirmance of the judgment; dissents from the court's opinion on rehearing and joins BOUDREAU, J., and WATT, C.J., in large part.

¶ 21 WATT, C.J., dissents.

opinion answers this question when it deals with the same facts albeit through a different argument. It states that 1) the record does not reveal knowing concealment by Sisk and 2) the disadvantage experienced by Hunt in this case was brought about by more than Sisk's failure to supplement his interrogatory answer. It had the same opportunity to determine the facts on its own. We agree with COCA's analysis and conclude that it settles Hunt's assertion about this issue.

BOUDREAU, J., with whom SUMMERS, J., joins: concurring in part; dissenting in part.

¶ 1 I agree with the portion of the majority opinion that allows the judgment below to stand. I dissent to the portion of the opinion which concludes that by dismissing Courville from the suit for the second time, plaintiff lost the capacity to refile his claim against Courville. The majority opinion is flawed in that it fails to treat 12 O.S. § 100 as a true statute of limitations.

¶ 2 A statute of limitations prescribes a time period within which an action must be brought upon a claim. It is remedial rather than substantive, in that it bars only the remedy—not the right or obligation. *Anderson v. Merriott,* 1976 OK 74, 550 P.2d 1320. A statute of limitations is not a limitation of authority or jurisdiction, but is instead a legal defense. *Kimberly v. DeWitt,* 1980 OK CIV APP. 2, ¶ 15, 606 P.2d 612, 617. We have previously recognized that the savings statute, 12 O.S. § 100, is remedial, not substantive. *Cruse v. Board of County Commissioners of Atoka County,* 1995 OK 143, 910 P.2d 998, 1001. Hence, § 100 is a true statute of limitations.

¶ 3 Section 100 cannot be considered either a jurisdictional limitation period or a statute of repose. A jurisdictional limitation period is defined as a prescribed time period that is so specifically attached to the subject of the claim that it must be construed as an element of the claim.[1] *Cruse, supra.,* 910 P.2d at 1004 n. 32. A jurisdictional limitation period is an absolute requirement. When a statute prescribes a time period that meets this definition, the failure to file within the prescribed period deprives the court of jurisdiction. *Shanbour v. Hollingsworth,* 1996 OK 67, 918 P.2d 73, 75. A jurisdictional time period is

1. An example of a jurisdictional limitation period is the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq.* Judicial power is invoked by the timely filing of the governmental tort claims action pursuant to § 157 and expiration of the 180 day time period in § 157(B) operates to bar judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity. *Shanbour v. Hollingsworth,* 1996 OK 67, 918 P.2d 73, 75.

not an affirmative defense. It is not subject to waiver or estoppel (tolling).

¶ 4 A statute of repose sets an outer chronological time boundary beyond which no cause of action may arise for conduct that would otherwise have been actionable.[2] *Neer v. State ex rel. Oklahoma Tax Commission*, 1999 OK 41, ¶ 19, 982 P.2d 1071, 1078. A statute of repose marks the outer boundary of a substantive right. It is different than a statute of limitations in that a statute of limitations only procedurally bars the remedy after the substantive right has vested. *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, 820.

¶ 5 As a statute of limitations, § 100 does not deprive the court of jurisdiction if the claim is not timely filed.[3] Section 100 is an affirmative defense. 12 O.S. § 2008(C)(18). Failure to plead it as an affirmative defense operates as a waiver. *Furr v. Thomas*, 1991 OK 93, ¶ 23, 817 P.2d 1268. Similarly, as a statute of limitations, § 100 is also subject to tolling. *Kordis v. Kordis*, 2001 OK 99, 37 P.3d 866. As an affirmative defense, unless the § 100 defense is pled and proved and a judgment is rendered on the defense, the plaintiff's remedy is not extinguished.

¶ 6 In sum, § 100 is a statute of limitations, not a jurisdictional limitation period and not a statute of repose. Accordingly, even after plaintiff dismissed Courville the second time, plaintiff retained the capacity to refile his claim against Courville. If plaintiff had chosen to refile his claim against Courville, then it would have been incumbent upon Courville to plead and prove the affirmative defense of § 100 (*i.e.*, to plead and prove that § 100 bars plaintiff's remedy against Courville). Until such time, neither plaintiff's right nor his remedy was extinguished. Therefore, plaintiff's second dismissal of Courville did *not* have the legal effect of a release of plaintiff's claim against Courville.

WATT, C.J. with whom SUMMERS, J. joins in large part.

¶ 1 The majority today holds Sisk's claim against Hunt was released because Sisk's second **dismissal** of Courville **without prejudice** operated to release Courville. The majority explains this "release" occurred because of the impact of 12 O.S.2001 § 100 which created an absolute bar to future refilings. In other words, the majority holds Sisk's dismissal of Courville without prejudice, under 12 O.S. § 683, **extinguished his claim.** I respectfully dissent.

¶ 2 The majority contends the common-law release rule of *Mid–Continent Pipeline Co. v. Crauthers*, 1954 OK 61, 267 P.2d 568, cited in *Burke v. Webb Boats, Inc.*, 2001 OK 83, 37 P.3d 811, is still good law in Oklahoma. That rule provides the **release** of the servant/tortfeasor in a respondeat superior case releases the master, whose liability is purely vicarious. While I agree that rule is good law in Oklahoma, I take issue with the majority's conclusion that it is applicable here, or that Sisk's affirmative act of dismissing Courville had the effect of releasing Hunt.

¶ 3 The majority's holding would allow a voluntary dismissal without prejudice, which accords no finality to a claim, to end the litigation, as if the claim had been determined on the merits. In so holding, the majority mischaracterizes the impact of § 100. Clearly, plaintiff's second dismissal places the protection from § 100 just beyond Sisk's grasp as to cases filed in the future. That is because the dismissal occurred outside the statute of limitations. However, the problems associated with recommencing the claim against the servant arises, not because of § 100, but because any refiling would occur outside the statute of limitations affecting this particular claim. Moreover, the claim against the servant is not "extinguished", as

---

2. An example of a statute of repose is 12 O.S. § 109, which bars, after 10 years, actions in tort dealing with deficiencies in design, planning, supervision, or observation of construction to real improvement.

3. Although the language of § 100 says "may commence a new action within one (1) year", the word "commence" is used liberally throughout the chapter on limitations of actions. *See* Title 12, Oklahoma Statutes, §§ 91 *et seq.* For example, 12 O.S. § 92 reads: "civil actions can only be commenced within the periods prescribed in this article." The use of the word "commence" does not raise limitations to a matter of jurisdictional dimensions. It is still an affirmative defense.

it would be in a "release" of the servant; it is merely subject to dismissal upon limitations grounds raised as an affirmative defense. I agree these actions do not occur in a vacuum. I do not agree, however, that the impact of § 100 on Sisk's dismissal of Courville without prejudice changed the nature of Hunt's liability from that of an employer with vicarious liability for its employee's negligence, to no more liability than that of a pre-UCATA joint tortfeasor whose co-defendant was released, i.e., none whatsoever.[1] The majority has gone to great lengths to place the present case in the same category as the claim in *Burke v. Webb Boats,* supra, in which the plaintiff **released** the employee/agent, thus releasing the employer/owner. However, the facts are different, and *Burke* does not apply here. There simply has been **no release of Courville by Sisk** in the present case.

¶ 4 Sisk should be able to proceed against Hunt alone. Oklahoma law provides that master and servant can be pursued separately in a respondeat superior case. See *Hooper v. Clements Food Company,* 1985 OK 6, 694 P.2d 943; *Employers Casualty Co. v. Barnett,* 1951 OK 186, 235 P.2d 685, 205 Okla. 73. I disagree with the majority's characterization of the language in *Hooper* as dicta (that the employee's negligence, not the employee's liability), is imputed to the master. The majority explains the release rule was not at issue in *Hooper.* In my opinion, the release rule is not at issue in the present case because Sisk did not release Courville. Moreover, the *Hooper* case contains basic tenets of respondeat superior law recognizing the nature of vicarious liability which applies in this case. Even as far back as 1939, this Court recognized that the pertinent issue in a respondeat superior case is that the employee's negligence determines an employer's liability. See *Southern Kansas Stage Lines Co. v. Crain,* 1939 OK 216, 89 P.2d 968, 185 Okl. 1, in which the negligence of a defendant/employee was litigated, despite his dismissal from the case by the plaintiff. The second

defendant/employee, who remained in the case, was exonerated by the jury. However, a verdict was rendered against the employer. On appeal, this Court explained the verdict and judgment entered against the employer represented its liability for the **negligence of the previously dismissed defendant,** and the judgment was upheld. It made no difference that the negligent employee was absent from the proceedings. It would make no difference if no employees were present; the case could proceed against the employer/master alone from the beginning.

¶ 5 Under the majority's decision, the dismissal of a party without prejudice now creates the potential for barring a suit, despite a plaintiff's compliance with 12 O.S.2001 § 100 and 12 O.S.2001 § 683. Clearly, under § 100, the second dismissal without prejudice places Sisk in a difficult position as to refiling the case against Courville. The claim is clearly subject to dismissal if the affirmative defense of the statute of limitations is raised at that time. It does not, however, prevent the case from proceeding against Hunt to determine Courville's *negligence,* if any, and Hunt's *liability* to Sisk. See gen., *Hooper v. Clements Food Company; Employers Cas. Co. v. Barnett,* supra.

¶ 6 Until today, under the Oklahoma statutes and our extant jurisprudence, plaintiffs have had the right to choose their defendants. That right has been extinguished by the majority opinion and its disregard of the plain reading and meaning of the statute, 12 O.S.2001 § 683. Clearly, the dismissal of the employee was without prejudice, regardless of what the trial court concluded. The majority contends it is irrelevant whether we term Sisk's dismissal of Courville a "dismissal with prejudice" or a "dismissal without prejudice". However, these terms have specific legal connotations. The dismissal in this case was not the equivalent of a release or an adjudication on the merits.[2] Although the

---

1. The UCATA eliminated the harshness of this common law rule regarding joint and several liability, which this case does not involve. Moreover, this Court held in *Burke* that respondeat superior cases are not included in the UCATA's coverage.

2. The term "dismissal with prejudice" is equivalent to an adjudication on the merits and operates as a bar to further action. See *Perfect Investments, Inc. v. Underwriters at Lloyd's, London,* 1989 OK 148, 782 P.2d 932, citing *Shell Petroleum Corp. v. Hess,* 1942 OK 55, 126 P.2d 534, 536, 190 Okla. 669. "A judgment is rendered on

statute of limitations makes Sisk's claims against Courville subject to dismissal if re-filed, it had no effect upon the plaintiff's right to continue its litigation against the employer under Oklahoma law, which was clear until the majority made a radical departure from our statutory and case law. I respectfully dissent.

the merits 'when it amounts to a declaration of the law as to the respective rights and duties of the parties, based on the ultimate facts or state of facts disclosed by the pleadings, and evidence upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.' " *Pettyjohn v. Plaster*, 1998 OK CIV APP 38, 956 P.2d 948, 950, citing *Crow v. Abraham*, 86 Or. 99, 167 P. 590, 591. " '[M]erits' means the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, or form". *Pettyjohn v. Plaster*, 956 P.2d at 950, citing *Flick v. Crouch*, 1967 OK 131, 434 P.2d 256, 261; *Providential Devel. Co. v. U.S. Steel Co.*, 236 F.2d 277, 280 (10th Cir.1956).